# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38854**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Kenneth W. FRANK, Jr.**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 April 2017

————————————

*Military Judge:* Ira Perkins (trial); Christopher Leavey (post-trial session); Tiffany M. Wagner (*DuBay* hearing).

*Approved sentence:* Dishonorable discharge, confinement for 1 year, and reduction to E-1. Sentence adjudged 11 March 2015 by GCM convened at Incirlik Air Base, Turkey.

*For Appellant:* Major Isaac C. Kennen, USAF; Captain Annie W. Morgan, USAF.

*For Appellee:* Captain Matthew L. Tusing, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and SPERANZA, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge SPERANZA joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

JOHNSON, Senior Judge:

A general court-martial composed of officer and enlisted members found Appellant guilty, contrary to his pleas, of one specification of rape in violation of Article 120 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. The court-martial sentenced Appellant to a dishonorable discharge, confinement for one year, and reduction to E-1. The convening authority approved the sentence as adjudged but waived the mandatory forfeitures of Appellant's pay and allowances for the benefit of Appellant's child.

Before us, Appellant raises five assignments of error: (1) a member of the court-martial failed to disclose information in voir dire that would have been a basis for a challenge for cause; (2) the military judge erred in denying a challenge for cause; (3) the military judge erred in admitting evidence under Military Rule of Evidence (Mil. R. Evid.) 413 and providing a related instruction; (4) the military judge erroneously instructed the court members regarding the burden of proof;[1] and (5) the military judge erred by failing to put the court members into deliberations to reconsider the sentence. In addition, we consider whether Appellant is entitled to relief due to a facially unreasonable delay in the appellate review of his court-martial. Finding no relief is warranted, we affirm the findings and sentence.

## I. BACKGROUND

Appellant was assigned to Incirlik Air Base, Turkey. He met Staff Sergeant (SSgt) RT at an on-base training event and they began communicating with one another by instant message and Facebook. In April 2014, Appellant and SSgt RT attended an on-base festival together. Over the course of the day SSgt RT consumed several alcoholic drinks and became intoxicated. She did not remember leaving the festival, but she recalled being in front of Appellant's dorm room with several other people. Her next memory after that was "waking up" to Appellant "having sex with her" in his room. She later testified that after she woke up she "scooted" away from Appellant and told him it hurt, but Appellant pulled her back and continued. SSgt RT testified she was not consenting. She did not initially report this incident.

SSgt RT had limited contact with Appellant after the April 2014 incident. However, on the night of 28 June 2014, SSgt RT encountered Appellant at the club on base. SSgt RT had left her headband in Appellant's room during the

---

[1] As the Court of Appeals for the Armed Forces recently decided this issue adversely to Appellant, *United States v. McClour*, 76 M.J 23 (C.A.A.F. 2017), we do not further address this issue here.

April incident, and she told him she wanted to get it back. She followed Appellant to his room. When they arrived, Appellant opened the door and pointed to the headband which was on a table inside. SSgt RT entered the room to get her headband. When she turned around, she saw Appellant had closed the door behind them and lowered his pants and underwear. Appellant placed his hand on SSgt RT's head and pushed her down to his penis, which he shoved in her mouth. SSgt RT removed it by pushing Appellant and turning her head. SSgt RT convinced Appellant to let go of her by insisting she had to use his bathroom.

Inside Appellant's bathroom, SSgt RT sent text messages to a friend, SSgt JR, and a coworker, Airman Basic (AB) TS, stating "save me." As SSgt RT was texting, she coincidentally received a message from AB TS, also stating "save me." SSgt RT decided to use AB TS's message asking her for help as a pretext to leave Appellant's room. She exited the bathroom and found Appellant now standing completely naked. Appellant grabbed the purse SSgt RT was holding and pushed her head down again, but she knocked him off balance by shoving him and she fled the room.

SSgt RT told her roommate about the June assault on the following day, a Sunday. The day after that, she informed a supervisor of the June assault, which ultimately led to her interview by the Air Force Office of Special Investigations. Appellant was subsequently charged with one specification of sexual assault by causing bodily harm for the April incident, in addition to rape for the June incident; however, the convening authority dismissed the April specification after the Article 32, UCMJ, 10 U.S.C. § 832, hearing. The sole charge before Appellant's court-martial was based on the June assault.

## II. DISCUSSION

### A. Court Member Misconduct

#### 1. Additional Background—the *DuBay* Hearing

Appellant's court-martial convened on 10 March 2015. Technical Sergeant (TSgt) MA was selected to serve as one of the court members. During group voir dire of the court members by the military judge, TSgt MA indicated she did not know Appellant, nor did she know anyone named in the specification of the charge. She also responded negatively when the military judge asked if

she, or a member of her family, or "anyone close to [her] personally" had "ever been the victim of an offense similar to the charge in [Appellant's] case."[2]

In response to a question from trial defense counsel, TSgt MA identified herself as a victim advocate. During individual voir dire, TSgt MA explained her role as a victim advocate involved providing services and support to individuals who reported being victims of sexual assault, but not assessing a victim's veracity or assuming the guilt of the alleged perpetrator. TSgt MA had undergone training and attended meetings for victim advocates, but she denied knowing any of the facts of Appellant's case. In the 11 months she had been a victim advocate, TSgt MA had never been assigned to assist an alleged victim of sexual assault. When the military judge clarified, "[Y]ou've never actually interacted with somebody who's a complainant of sexual assault, correct?" she responded, "No." TSgt MA stated her training and experiences as a victim advocate would not prevent her from serving as a fair and impartial court member. At the conclusion of voir dire, TSgt MA was not challenged for cause, and the Defense elected to exercise their peremptory challenge against another member. TSgt MA served on the panel that convicted and sentenced Appellant.

Appellant submitted a declaration with his initial assignments of error asserting that, notwithstanding her responses at trial, TSgt MA in fact did know Appellant. In particular, Appellant asserted he met TSgt MA when they both attended Noncommissioned Officer Academy (NCOA) in Germany for several weeks in late 2013. Appellant knew TSgt MA was dating TSgt JR,[3] another student and Appellant's suitemate at NCOA with whom he shared a common bathroom. Appellant would also see TSgt MA at the school on a daily basis and he knew she had orders to transfer from Germany to Incirlik Air Base, where he was stationed. Appellant further stated that after TSgt MA arrived at Incirlik he would see her around the base and they would make "small talk." Appellant indicated he also had professional contact with TSgt MA because she was an "account custodian" that he dealt with. Appellant stated TSgt MA

---

[2] The specification of the charge provided to the court members at the outset of the proceeding read as follows:

> In that TECHNICAL SERGEANT KENNETH W. FRANK, JR., United States Air Force, 39th Maintenance Squadron, Incirlik Air Base, Turkey, did, at or near Incirlik Air Base, Turkey, on or about 29 June 2014, commit a sexual act upon [SSgt RT], to wit: penetration of [SSgt RT's] mouth with TECHNICAL SERGEANT KENNETH W. FRANK, JR.'s penis, by unlawful force, to wit: grabbing [SSgt RT's] head with his hand and putting his penis into [SSgt RT's] mouth.

[3] TSgt JR was a staff sergeant at the time.

was aware prior to trial from speaking with Appellant that he was on administrative hold, but he did not know if she was aware of the allegations involved in the case. Appellant stated he could not recall if he informed his trial defense counsel of his prior interactions with TSgt MA. However, Appellant asserted he was entitled to a new trial or, at a minimum, a fact-finding hearing pursuant to *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967) to explore TSgt MA's failure to disclose her knowledge of Appellant.

In response, the Government did not offer any evidence to rebut Appellant's allegations but asserted Appellant had failed to demonstrate that TSgt MA failed to honestly answer any question during voir dire or, assuming she had, that honest answers would have indicated a basis for challenge for cause. *See United States v. Mack*, 41 M.J. 51, 55 (C.M.A. 1994). On 6 December 2016, we ordered a post-trial fact-finding hearing pursuant to *DuBay*, 37 C.M.R. at 413.[4] The hearing was held on 14 and 16 February 2017 at Joint Base Andrews, Maryland. A military judge heard testimony from TSgt JR, Appellant, and TSgt MA; she received a number of appellate exhibits; and she heard argument from counsel for both sides. In his testimony, Appellant elaborated on his interactions with TSgt MA at NCOA and at Incirlik, including a substantive face-to-face conversation at each location in addition to exchanging casual pleasantries. For her part, TSgt MA maintained she did not know Appellant or recall any interaction with him prior to the court-martial.

---

[4] Our order instructed the military judge to answer the following questions:

> 1. Did TSgt [MA] fail to honestly answer questions from the military judge regarding any prior knowledge of or relationship with Appellant?
>
> 2. What was the extent of TSgt [MA's] interaction with Appellant, if any, prior to the commencement of Appellant's court-martial on 10 March 2015?
>
> 3. What, if anything, did TSgt [MA] know about Appellant's pending court-martial and the underlying charged offense prior to the commencement of trial on 10 March 2015?
>
> 4. What was the extent of TSgt [MA's] prior relationship or interaction, if any, with the victim of the charged offense, SSgt RT, or any other witness who testified at Appellant's court-martial?
>
> 5. If TSgt [MA] did fail to accurately answer the military judge's questions regarding prior knowledge or relationship with Appellant, would accurate answers have provided a basis for a challenge for cause against TSgt [MA]?

In addition, our order authorized the military judge to "address any other matters that may arise during the fact-finding hearing that he or she finds to be pertinent to the issues in question."

After the hearing, the military judge made a number of written findings of fact. She found TSgt MA had no actual bias against Appellant. However, with respect to TSgt MA's prior knowledge of and interaction with Appellant, she did find TSgt MA failed to honestly answer questions during voir dire. In particular, the military judge found TSgt MA did know Appellant at the time of trial, and found TSgt MA's testimony at the *DuBay* hearing that she did not know him, did not recognize his name on the charge sheet, and did not recognize his face at trial to be "not credible." Nevertheless, the military judge further found TSgt MA's interactions with Appellant had been "superficial" and would not have established a basis for a challenge for cause against TSgt MA for actual or implied bias had they been disclosed during voir dire. The military judge also found TSgt MA had no prior knowledge of the facts of the case nor any prior relationship with SSgt RT or with any other witness who testified at trial.

However, in addition to TSgt MA's prior interactions with Appellant, the military judge and parties explored TSgt MA's prior experiences, predating and apart from her role as a trained victim advocate, in speaking with other Air Force members about their sexual activities after consuming alcohol. The military judge found:

> [T]hroughout her career [TSgt MA] was a quasi-Victim Advocate for other Airmen and co-workers, in that she would listen to and counsel those who doubted the consent of their sexual activities. TSgt [MA] has an unassuming disposition that allows many people to feel comfortable sharing personal details of their intimate relationships, and many did so. She had multiple Airmen (both men and women) confide in her details of a sexual experience in which they were unsure about whether their sexual relations were consensual. She would listen to the Airmen who were "confused" about their experiences. She would always provide these co-workers with "an ear" and suggestions on what to do and how to act if again placed in a similar situation. All of the incidents the Airmen co-workers discussed with her involved alcohol consumption followed by a sexual encounter that caused confusion as to whether consent existed. These sexual situations were all sexual encounters involving two Airmen. TSgt [MA] considered all of these people she counseled "co-workers"—not close to her and not members of her family. She remembers being asked at the trial about knowing someone who had been a victim of a similar offense to that charged on the Flyer, but she did not think her co-workers' experiences were similar to the charged offense. Additionally, when asked at the *DuBay* hearing if she viewed

6

> these co-workers as victims, she was non-responsive and instead talked about providing an ear for them.

(Footnotes omitted.) The military judge did not specifically find that TSgt MA failed to *honestly answer* voir dire questions implicating her past experiences speaking with Airmen about their alcohol-related sexual encounters. However, she noted TSgt MA was asked the following two questions during voir dire: "[A]ny of you because of a personal experience with yourself or involving someone that's close to you, been involved or affected by a situation involving sexual assault that you believe would affect your ability to sit impartially or without bias as a court member on this particular case?"; and "[Y]ou've never actually interacted with somebody who's a complainant of sexual assault, correct?" The military judge concluded her analysis as follows:

> [TSgt MA] determined that the co-workers were not close enough to her to disclose to the Court. She also determined that the non-consensual sexual encounters of her co-workers were not similar to the charged offense she read on the Flyer such that she would have had to disclose those encounters. However, there were at least two questions asked that provided her the opportunity to divulge her past role assisting Airmen who were victims. Considering the totality of the circumstances—including her position as a Victim Advocate at the time of the trial, her long desire to be a Victim Advocate since 2006, her proactive counseling of Airmen co-workers questioning the consensual nature of their sexual relationships—she has a considerable interest in sexual assaults. That fact, coupled with the fact that TSgt [MA] had passing knowledge of the Appellant that she failed to disclose, and was specifically trained as a victim advocate, makes it, at the very least, a close call for implied bias. An objective observer may have substantial doubt about the fairness of the Appellant's court-martial if she sat as a member. When an implied bias challenge for cause is close, the liberal grant mandate for defense applies. Therefore, a challenge for cause for implied bias exists.

In summary, the military judge concluded: (1) there was no actual bias; (2) TSgt MA failed to honestly answer questions implicating her prior knowledge of Appellant, but those interactions did not establish a basis for challenge for cause for implied bias; and (3) a basis for challenge for cause for implied bias existed with regard to TSgt MA's interactions with other Airmen regarding alcohol-related sexual encounters, but the military judge did not specifically find TSgt MA failed to honestly answer questions implicating those experiences.

### 2. Court Member Misconduct—Standard of Review

A court member's failure to disclose information in voir dire entitles an appellant to a new trial when the appellant demonstrates both (1) the member failed to answer honestly a material question on voir dire, and (2) a correct response would have provided a valid basis for a challenge for cause. *Mack*, 41 M.J. at 55.

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses challenges based upon both actual and implied bias." *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citing *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)). "Actual bias is personal bias [that] will not yield to the military judge's instructions and the evidence presented at trial." *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012). Implied bias exists when most people in the member's position would be biased, and is assessed based on the totality of the circumstances. *United States v. Strand*, 59 M.J. 455, 459 (C.A.A.F. 2004). The test for implied bias is "objective, viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *Clay*, 64 M.J. at 276) (internal quotation marks omitted). "The hypothetical 'public' is assumed to be familiar with the military justice system." *Id.* (citing *United States v. Downing*, 56 M.J. 419, 423 (C.A.A.F. 2002)).

In general, we review a military judge's findings of fact under a "clearly erroneous" standard and conclusions of law under a de novo standard. *See United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995). However, we review rulings on challenges for implied bias "pursuant to a standard that is less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Peters*, 74 M.J. 31, 33 (C.A.A.F. 2015) (quoting *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006); *United States v. Napoleon*, 46 M.J. 279, 283 (C.A.A.F. 1997)) (internal quotation marks omitted). This is because "cases of implied bias are based upon an objective test and therefore the military judge is given less deference." *Id.* at 34. "The military judge is also mandated to err on the side of granting a challenge. This is what is meant by the liberal grant mandate." *Id.*

### 3. Court Member Misconduct—Analysis

We find no abuse of discretion in the military judge's conclusion that there was no showing of actual bias against Appellant. TSgt MA affirmatively indicated at various points during voir dire that she could follow the military judge's instructions, hold the Government to its burden of proof, and serve as

a fair and impartial court member. None of her answers at trial or during the *DuBay* hearing, nor any other evidence adduced, undermine the military judge's conclusion that TSgt MA was willing to consider the evidence and follow the court's instructions.

We find the military judge's finding that TSgt MA did not honestly answer voir dire questions regarding her prior knowledge of Appellant was not clearly erroneous. Appellant's testimony supported the military judge's findings that Appellant met TSgt MA at NCOA and continued to interact with her at Incirlik Air Base, including one conversation in which Appellant shared that he was engaged and was on administrative hold. Based on her in-court observations, the military judge specifically found Appellant's testimony was credible and TSgt MA's denials were not. The military judge's conclusion that, although the relationship "did not extend beyond simple recognition and small talk," TSgt MA failed to honestly answer voir dire questions as to whether she knew Appellant was not an abuse of discretion.

We also agree with the military judge's conclusion that TSgt MA's prior interactions with Appellant, if disclosed in voir dire, would not have provided a basis for a challenge for cause for implied bias. Implied bias exists if most people in the court member's circumstances would be prejudiced or biased against the accused. *Strand*, 59 M.J. at 459. The relationship Appellant described was both cordial and superficial. There is no indication TSgt MA had any knowledge that Appellant was facing a court-martial or of the underlying facts, that she personally knew any of the witnesses, or that she received any other information that would have adversely affected her view of Appellant prior to the commencement of the trial. Considering the totality of the circumstances, the limited interactions between Appellant and TSgt MA would not cause a member of the public familiar with the military justice system to doubt the legality, fairness, or impartiality of Appellant's trial. Therefore, TSgt MA's failure to disclose those interactions does not entitle Appellant to a new trial.

Turning to TSgt MA's failure to disclose her experiences with Airmen who spoke with her regarding alcohol-related sexual encounters, we apply the same two-part test for relief set forth in *Mack*, beginning with whether TSgt MA failed to honestly answer a material question during voir dire. 41 M.J. at 55. We again note the military judge did not specifically find TSgt MA failed to honestly answer any question in voir dire that implicated these experiences. She did identify two questions that would have "provided [TSgt MA] the opportunity to divulge" this "past role," but this falls well short of a finding TSgt MA answered dishonestly. Indeed, the military judge found as fact that TSgt MA considered these Airmen co-workers, and not "close to her or members of her

family." Nor did the military judge specifically find TSgt MA considered these Airmen "victims" or complainants of sexual assault.[5]

In the absence of a finding by the military judge, our own de novo review of the record fails to establish that TSgt MA did not honestly answer any voir dire question that implicated her past interactions with Airmen who spoke with her regarding their alcohol-related sexual experiences. TSgt MA's testimony at the *DuBay* hearing on this point consisted substantially of the following: prior to becoming a victim advocate, other Airmen came to her and spoke with her about sexual encounters they had with other Air Force members after consuming alcohol; these individuals were "unhappy" about the sex they had; they were "confused" and wanted to "clarify" what had happened after a "drunk one-night stand kind of thing." TSgt MA stated this occurred "a couple" of times throughout her Air Force career. Both men and women approached her in this way. They were co-workers and not close friends. TSgt MA did not deliberately solicit or induce others to discuss such matters with her. TSgt MA believed the individuals felt comfortable speaking to her; she provided an ear and let them do most of the talking. TSgt MA would give them "suggestions for the next time they were at a party" but "never told them that they were sexually assaulted." She did not bring these experiences up during voir dire because those situations were not similar to the offense Appellant was charged with, so she did not think of them.

The first voir dire question the military judge found to be potentially implicated by these experiences was: "[A]ny of you because of a personal experience with yourself or involving someone that's close to you, been involved or affected by a situation involving sexual assault that you believe would affect your ability to sit impartially or without bias as a court member on this particular case?" The record does not support a finding TSgt MA failed to answer this question honestly. First, TSgt MA testified these situations involved co-workers, not close friends, family members, or anyone "close to her," as specified in the question. Second, TSgt MA never identified these individuals as victims of sexual assault. She did not tell any of the individuals she spoke with that they were victims of sexual assault. There is no indication any of them ever reported being sexually assaulted. When defense counsel asked "[Y]ou've actually had individuals come to you and express that they believed themselves to be victims of sexual assault," TSgt MA responded, "No. They were trying to clarify what actually happened." Third, even if she had identified these individuals as sexual assault victims, she could have honestly answered the voir dire question in the negative so long as she believed she could "sit impartially or without bias."

---

[5] The military judge characterized TSgt MA's answer to a question as to whether she viewed these co-workers as victims as "non-responsive."

For each of these reasons, TSgt MA could reasonably have concluded the correct answer to the question asked was "No."

The second voir dire question the military judge identified as "providing an opportunity" to discuss these experiences was: "[Y]ou've never actually interacted with somebody who's a complainant of sexual assault, correct?"[6] Again the record does not support a finding that TSgt MA did not answer this question honestly. First, this question was asked during individual voir dire in the context of TSgt MA's official role as a trained victim advocate, which she disclosed and which was explored during voir dire. There is no evidence that any of these conversations with co-workers occurred during TSgt MA's tenure as an official victim advocate at Incirlik Air Base. Second, TSgt MA did not testify that she considered any of these individuals to be "victims" of sexual assault, and there is no evidence that any of them actually made a sexual assault complaint. Again, for each of these reasons, "No" was a reasonable answer to the question asked.

Because Appellant has failed to show TSgt MA did not honestly answer any question posed in voir dire that implicated her past conversations with co-workers regarding these alcohol-related sexual encounters, he is not entitled to a new trial. Therefore, it is unnecessary to decide whether the military judge erred in concluding that the disclosure of TSgt MA's past conversations with co-workers regarding alcohol-related sexual encounters, combined with her long-standing interest in being a victim advocate, her status as a victim advocate at the time of trial, and her failure to disclose her prior knowledge of Appellant, informed by the liberal grant mandate, established a basis for a challenge for cause for implied bias.[7]

## B. Denial of Challenge for Cause

Appellant next asserts the trial military judge erred in denying the Defense's challenge for cause against a court member, Major (Maj) BB, for im-

---

[6] The military judge's written findings indicate this was a question from trial defense counsel; in fact it was asked by the trial judge.

[7] Although we do not address the military judge's finding of implied bias, we note her written findings inaccurately characterize TSgt MA's testimony in several respects. For example, contrary to the military judge's finding, TSgt MA did not testify that "many" Airmen confided in her about these sexual encounters; TSgt MA did not describe her co-workers' experiences as "non-consensual sexual encounters," as the military judge calls them; and the military judge's assertion that the voir dire question "provided [TSgt MA] the opportunity to divulge her past role assisting Airmen who were victims" is misleading because TSgt MA never characterized these Airmen as "victims."

plied bias. As a result, Appellant argues the findings and sentence must be set aside. We disagree.

### 1. Additional Background—Challenge for Cause

In response to a general voir dire question from the military judge, Maj BB indicated an individual close to him personally had been a victim of an offense similar to the charge in Appellant's trial. During individual voir dire, the following colloquy took place between the military judge and Maj BB:

> Q [Military Judge]. Any member who has a victim issue, I know how sensitive that can be. We're in a public forum here. I don't want to have to have you expose more than you need to but can you just tell me, who is the person that you know who's was [sic] a victim of sexual assault?
>
> A [Maj BB]. So, that's where I would like to respond in a private form.
>
> Q. Okay. We're open here. I won't make you go any further. Is it someone close to you?
>
> A. Yes, Sir.
>
> Q. Okay. We can leave it at that. Can you tell us, what was the nature of the sexual assault?
>
> A. So nothing that introduces penetration of any sort.
>
> Q. Okay, was it a touching offense?
>
> A. Correct.
>
> Q. Okay. How long ago did the offense occur?
>
> A[.] Over a decade.
>
> Q. Over a decade ago? And to [sic] what was the resolution of the issue, and by that I mean was the perpetrator taken to trial, was [sic] any allegations made?
>
> A. So the member retired shortly thereafter.
>
> Q. So it was an Air Force member who had done something inappropriate?
>
> A. Yes, Sir.
>
> Q. And that member retired?
>
> A. Yes, Sir.
>
> Q. Okay. Happened about a decade ago?

A. Yes, Sir.

Q. And the victim is someone close to you?

A. Correct.

Q. Okay. Close enough that you don't feel comfortable discussing it further than that?

A. [Nodded.]

Q. Okay. How often do you discuss this issue with the person that you're close to?

A. Hardly ever.

Q. How do you become aware that it was something that happened to the person?

A. Based upon our relationship at the time.

Q. Okay. Is it something you continue to talk about now or no?

A. No, Sir.

Q. Okay. So someone you're close to was the victim of -- it wasn't penetration. Could you give me any more detail as to what was the offense?

A. So, I would say some inappropriate touching within an office environment.

Q. Sexual harassment that involved touching?

A. Correct.

Additional questioning indicated the sexual assault was a one-time event and the victim was also a military member. It was not a subject that Maj BB discussed regularly with the victim, and reading the charge against Appellant did not cause him to think of the incident—it crossed his mind only in response to the direct voir dire question. Maj BB opined that nothing about the 10-year-old sexual assault or his relationship with the victim would prevent him from serving as a fair, unbiased, and impartial court member.

Trial defense counsel challenged Maj BB for cause for implied bias.[8] The military judge denied the challenge and provided the following reasoning:

---

[8] In addition to Maj BB's relationship with the unidentified victim of the 10-year-old sexual assault, the Defense also challenged Maj BB due to his prior interaction with SSgt RT, the victim in Appellant's case. Specifically, Maj BB disclosed he had received

> With respect to the prior sexual assault, I would note that it was 10 years ago. He did not think about it until we raised the issue and in all candor he told us there was an incident that appears to be a blue-on-blue, Air Force-on-Air Force sexual type of assault that occurred in the workplace on one occasion, someone who was retired. He discussed it once with this individual. He hasn't repeatedly discussed it with them and he, I think he was very clear and candid in his responses that in no way would that affect his ability to sit impartially. So I find no actual or implied bias and I will not grant that challenge for cause.

The Defense exercised its peremptory challenge against another court member, and Maj BB served as president of the panel that convicted and sentenced Appellant.

### 2. Challenge for Cause—Standard of Review

R.C.M. 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses challenges based upon both actual and implied bias." *Elfayoumi*, 66 M.J. at 356 (citing *Clay*, 64 M.J. at 276).

"Actual bias is personal bias [that] will not yield to the military judge's instructions and the evidence presented at trial." *Nash*, 71 M.J. at 88. Implied bias exists when most people in the member's position would be biased, and is assessed based on the totality of the circumstances. *Strand*, 59 M.J. at 459. The test for implied bias is "objective, viewed through the eyes of the public, focusing on the appearance of fairness." *Bagstad*, 68 M.J. at 462 (quoting *Clay*, 64 M.J. at 276) (internal quotation marks omitted). The burden of establishing grounds for a challenge for cause is on the party making the challenge. R.C.M. 912(f)(3).

We review rulings on challenges for implied bias under a standard less deferential than abuse of discretion, but more deferential than de novo. *Peters*, 74 M.J. at 33. This is because "cases of implied bias are based upon an objective test and therefore the military judge is given less deference." *Id.* at 34. Appellate courts require a clear indication the military judge applied the correct law in denying an implied bias challenge for cause. *Id.* In addition, "[t]he military judge is also mandated to err on the side of granting a challenge. This is what is meant by the liberal grant mandate." *Id.*

---

one-on-one training from SSgt RT on the use of certain computer systems on one occasion for approximately 30 minutes. Before us, Appellant does not assert the military judge erred in denying the challenge for cause on this basis, and we find no such error.

### 3. Challenge for Cause—Analysis

The military judge articulated his reasoning for denying the challenge for cause against Maj BB on the record. We agree with Appellant that the military judge's reasoning can be faulted in two respects. First, his statement that Maj BB discussed the incident with the unidentified victim only one time is not supported by Maj BB's answers, and appears unlikely given that Maj BB indicated he knew the victim at the time the assault occurred. Second, the military judge did not articulate that he specifically considered the liberal grant mandate. Accordingly, we afford his ruling somewhat less deference. *See United States v. Hollings*, 65 M.J. 116, 119 (C.A.A.F. 2007); *Clay*, 64 M.J. at 277.

Nevertheless, we are not persuaded the challenge should have been granted. Factors weighing in favor of upholding the denial include the fact that the incident was 10 years old, the fact that it involved only touching rather than an act of penetration, the fact that it was not a recurring topic of conversation between Maj BB and the victim, the fact that it did not initially come to Maj BB's mind when he saw the charge before the court, Maj BB's firm assurances that he could be fair and impartial and follow the military judge's instructions, and the military judge's opportunity to personally observe Maj BB's reactions and demeanor. *See United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996) (noting the military judge is entitled to great deference in light of his opportunity to personally observe and assess the credibility of court members). In our view, Appellant places too much emphasis on Maj BB's reluctance to identify the victim. His reticence evinces sensitivity regarding potentially publicly revealing the identity of a sexual assault victim personally close to him, not necessarily painful emotion or inability to speak of the event. He did not defy the military judge, who readily accommodated Maj BB's preference not to reveal the victim's identity. Although the military judge did not specifically refer to the liberal grant mandate, this case was not close enough to render this omission fatal.

A review of cases in which military judges erred in failing to grant challenges for cause for implied bias reinforces our conclusion. For example, this is not the case of a member with two young daughters in a court-martial for rape who announced he would be "merciless" in sentencing an accused found guilty of "raping a young female." *Clay*, 64 M.J. at 275. Appellant's case is also unlike *Daulton*, a trial for sexual abuse of children, where a member revealed both her sister and mother had been sexually abused as children, and the member's statements that she believed she could set aside those experiences was "less than resounding." 45 M.J. at 214, 218. Considering the totality of the circumstances as viewed by a member of the public knowledgeable of the military justice system, and applying the appropriate standard of review, we are not persuaded the military judge erred.

**C. Mil. R. Evid. 413 Evidence and Instruction**

Appellant next contends the military judge erred in admitting evidence of the April 2014 incident as propensity evidence of a similar crime in a sexual offense case, and instructing the members accordingly. We find no error.

Appellant was initially charged with sexual assault by causing bodily harm to SSgt RT in violation of Article 120, UCMJ, for the April 2014 incident in Appellant's dorm room, in addition to the June 2014 rape. However, the April specification was dismissed after the Article 32, UCMJ, hearing and was not referred to trial. At trial, the Defense successfully moved to admit evidence of the April incident as an exception to the general prohibition on evidence of other sexual behavior by an alleged sexual assault victim. Mil. R. Evid. 412(a), (b). The Government opposed that motion, but when the Defense prevailed the Government gave notice that it intended to use the April incident as evidence of a similar crime in a sexual offense case pursuant to Mil. R. Evid. 413. The Defense, in turn, objected to the Government's notice as untimely. The military judge found good cause for the Government's late notice pursuant to Mil. R. Evid. 413(b) in light of the court's ruling on the Defense's Mil. R. Evid. 412 motion. However, he did not articulate for the record any other analysis pursuant to Mil. R. Evid. 413 or 403 for his ruling.

The military judge later instructed the court members as follows:

> Evidence has been introduced indicating that [SSgt RT] had sexual intercourse with [Appellant] on 19 April 2014, approximately two months prior to the alleged conduct in this case. If you believe that this sexual behavior was consensual, this evidence should be considered by you on the issue of [SSgt RT's] credibility or motives with respect to the reporting the [sic] alleged offense.

> [SSgt RT] has testified that the 19 April 2014 sexual act with [Appellant] was not consensual. [Appellant] is not charged with this other offense. This evidence may have no bearing on your deliberations unless you first determine by a preponderance of the evidence, that it is more likely than not, this uncharged offense occurred; that is that [Appellant] sexually assaulted [SSgt RT] by having sex with her without her consent on 19 April 2014. You may consider the evidence of such other sexual offense if you find by a preponderance of the evidence that it occurred for its tendency, if any, to show [Appellant's] propensity or predisposition to engage in sexual offenses. You may not, however, convict [Appellant] solely because you believe he committed this other

offense or solely because you believe [Appellant] has a propensity or predisposition to engage in sexual offenses. In other words, you cannot use this evidence to overcome a failure of proof in the government's case, if you perceive any to exist. [Appellant] may be convicted of an alleged offense only if the prosecution has proven each element beyond a reasonable doubt.

A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). Mil. R. Evid. 413 provides that "[i]n a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any manner to which it is relevant." Mil. R. Evid. 413(a). "This includes using evidence of either a prior sexual assault conviction or uncharged sexual assaults to prove that an accused has a propensity to commit sexual assault." *United States v. Hills*, 75 M.J. 350, 354 (C.A.A.F. 2016) (citing *United States v. James*, 63 M.J. 217, 220–22 (C.A.A.F. 2006)).

In *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000), the Court of Appeals for the Armed Forces (CAAF) required military judges to make the following three threshold findings before admitting evidence under Mil. R. Evid. 413: (1) the accused is charged with an offense of sexual assault; (2) the evidence proffered is evidence of his commission of another offense of sexual assault; and (3) the evidence is relevant under Mil. R. Evid. 401 and Mil. R. Evid. 402. Under Mil. R. Evid. 401, evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Under Mil. R. Evid. 402, "[r]elevant evidence is admissible unless any of the following provides otherwise: (1) the United States Constitution as it applies to members of the Armed Forces; (2) a federal statute applicable to trial by courts-martial; (3) these rules; or (4) this Manual." Mil. R. Evid. 402(a)(1)–(4). "Irrelevant evidence is not admissible." Mil. R. Evid. 402(b).

If the proffered evidence meets the threshold findings required by *Wright*, the military judge must still apply the balancing test of Mil. R. Evid. 403. The evidence "may be excluded if its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members.'" *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005) (quoting Mil. R. Evid. 403).

We note that at the point the Government gave notice it intended to use evidence of the April incident as propensity evidence pursuant to Mil. R. Evid. 413, the military judge had already ruled evidence of that incident was admissible under Mil. R. Evid. 412. Thus, the issue before us with respect to Appel-

lant's assignment of error is the military judge's decision to admit such evidence as evidence of a similar crime in a sexual offense case under Mil. R. Evid. 413, as well as constitutionally-required evidence of other sexual behavior by an alleged victim under Mil. R. Evid. 412. Such a determination, even if the evidence is already admissible for another purpose, still requires the military judge to make the threshold findings required by *Wright* and perform the Mil. R. Evid. 403 balancing test. We generally review such rulings for an abuse of discretion. *Solomon*, 72 M.J. at 179. However, where, as here, the military judge fails to articulate his reasoning on the record, we afford less deference. *See United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010); *Berry*, 61 M.J. at 96.

Nevertheless, even applying a de novo standard of review we find the admission of evidence of the April incident under Mil. R. Evid. 413 was not error. With regard to the first threshold finding under *Wright*, Appellant was charged with a sexual assault. As to the second, the proffered evidence was evidence of another sexual assault. In this regard, the military judge was not bound by the findings or recommendations of an Article 32 pretrial hearing officer, even if he had been aware of them. Nor was the military judge required to make his own finding as to whether the uncharged sexual assault occurred; it was enough that he "conclude that the members could find by a preponderance of the evidence that the offense[ ] occurred." *Solomon*, 72 M.J. at 179. Here, SSgt RT testified that she did not consent to the April incident, and that Appellant pulled her back and continued "having sex" with her after she pulled away and told him it hurt. This was sufficient for purposes of the second threshold finding required by *Wright*. 53 M.J. at 482.

With regard to the third threshold finding, the evidence was relevant. Evidence that Appellant sexually assaulted SSgt RT two months earlier without being reported tended to make it more probable that he attempted to do so again; and whether or not the subsequent charged sexual assault occurred was obviously a matter of consequence in determining the outcome of the trial. Mil. R. Evid. 401. SSgt RT's testimony was not otherwise inadmissible under the law. Mil. R. Evid. 402. Thus, the threshold findings required by *Wright* were met.

Turning to the required balancing test under Mil. R. Evid. 403, we readily find the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members. The military judge had already ruled, in granting the Defense's own motion, that evidence of the April incident was admissible. The military judge's ruling merely enabled the Government to use evidence of the same event for another purpose, consistent with Mil. R. Evid. 413. Under these circumstances,

admitting this same evidence for this additional purpose was not unfair or significantly confusing or misleading.

Because the evidence was appropriately admitted under Mil. R. Evid. 413 as well as Mil. R. Evid. 412, it was proper for the military judge to instruct the members accordingly. Trial defense counsel did not object to the instructions, which were substantially patterned after the Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 7-13-1 and ¶ 7-14. On appeal, Appellant has not asserted any defect in the form or content of the instructions given, beyond his objection to the use of evidence under Mil. R. Evid. 413. Accordingly, having found the use of the evidence under Mil. R. Evid. 413 was proper, we find no error in the military judge's ruling or the instructions given.

## D. Sentencing Deliberations

Prior to delivering sentencing instructions to the court members, the military judge confirmed with the Government and Defense that a dishonorable discharge was a mandatory punishment for the offense of which Appellant had been convicted. The military judge repeatedly instructed the court members that a dishonorable discharge was a mandatory sentence in this case. The sentencing worksheet provided to the court members listed, under the heading "Punitive Discharge," the punishment "To be dishonorably discharged from the service." Just below this language the worksheet listed other punishment options in ascending order of severity, beginning with the option to impose "no *further* punishment." (Emphasis added.) Each of these punishment options below the dishonorable discharge included a box for the members to check to indicate whether or not they selected that option. There was no check box next to the dishonorable discharge. The military judge instructed the members on the use of the sentencing worksheet, including the direction to line through any "inapplicable portions" of the worksheet after the court had made its decision. The Defense did not object to the sentencing instructions or worksheet.

The court president, Maj BB, marked the check boxes on the worksheet to indicate the court sentenced Appellant to reduction to the grade of E-1 and confinement for one year. Maj BB lined through the options the court did not select, to include "no further punishment," reprimand, forfeitures, restriction, and hard labor without confinement. He did not line through the dishonorable discharge. However, Maj BB did not include the dishonorable discharge when he announced the sentence. The military judge adjourned the court-martial immediately afterward without any clarification of the sentence imposed. He authenticated the record of trial on 26 April 2015.

On 14 May 2015 the convening authority, before he acted on the court-martial, directed a post-trial session pursuant to R.C.M. 1102 in order to clarify

the announcement of the sentence. Another military judge conducted the session at Incirlik Air Base on 28 May 2015. The military judge asked counsel for each side for their recommendations on how to proceed. Trial counsel recommended the panel simply "reaffirm their sentence and reread the sentence as adjudged on the record." Trial defense counsel contended the sentencing worksheet, although not objected to at the time, was improper in that it should have required the members to affirmatively vote on and select the dishonorable discharge, notwithstanding that it was a mandatory punishment. Therefore, the Defense argued, the members must re-vote on the sentence.

The military judge pursued a different course. He brought the members into the courtroom and provided the original sentencing worksheet to the court president, Maj BB. Maj BB confirmed that he was the one who marked the worksheet and that it accurately reflected the sentence adjudged by the panel, to include a dishonorable discharge, confinement for one year, and reduction to E-1. The military judge questioned each panel member and confirmed that, when they voted on the sentence, each understood that a dishonorable discharge was mandatory and would be part of the sentence imposed. Maj BB then re-announced the sentence by reading from the worksheet, this time including the dishonorable discharge. The military judge then excused the members and concluded the hearing.

Appellant now contends the military judge failed to follow the proper procedure to correct a possibly erroneous announcement of the sentence. Therefore, he argues, to the extent the record is ambiguous, this court should decline to impose a punishment greater than that originally announced at trial. We disagree.

A convening authority may direct a post-trial session of a court-martial at any time before the convening authority takes initial action on the case. R.C.M. 1102(d). Such a post-trial session may not be directed for the purpose of "increasing the severity of the sentence *unless the sentence prescribed for the offense is mandatory*." R.C.M. 1102(c)(3) (emphasis added). At such a proceeding, "[t]he military judge shall take such action as may be appropriate." R.C.M. 1102(e)(2). At the time of Appellant's offense, a dishonorable discharge was a mandatory punishment for the crime of rape in violation of Article 120, UCMJ. *See* 10 U.S.C. § 856(b).

The court president's failure to include the mandatory dishonorable discharge in the announcement of the sentence was a proper subject for a post-trial session under R.C.M. 1102. The military judge was authorized to take appropriate action to resolve the matter, and he did so. The court members' original intent was evident in light of the instructions they had been given and the sentencing worksheet as marked by Maj BB. The military judge took appropriate action to confirm the members' intent, removing any ambiguity from

the record. His action resulted in a corrected announcement of the sentence that matched both the members' original intent and the requirements of the law.

Appellant offers no authority for his assertion that the members were required to reconsider and re-vote on his sentence. Similarly, as the Government points out, his reference to dusty decisions from our sister court regarding ambiguous announcements of forfeitures of pay in *United States v. Henderson*, 21 M.J. 853, 854 (A. Ct. Mil. Rev. 1986) and *United States v. Smith*, 43 C.M.R. 660, 661 (A.C.M.R. 1971) are inapposite because neither case dealt with the clarification of a mandatory punishment. Doubtless it would have been preferable that the erroneously announced sentence be addressed when it occurred, but the action taken by the military judge at the post-trial session was appropriate, and we find no error.

### E. Post-Trial and Appellate Delay

Appellant's record of trial was originally docketed with this court on 28 July 2015. Thus, 21 months have elapsed from that time until this court has issued its decision. In *United States v. Moreno*, the CAAF established a presumption of unreasonable post-trial delay when this court does not render a decision within 18 months of the case being docketed. 63 M.J. at 135. Accordingly, although not raised by Appellant, we consider whether he is entitled to relief for delay in the appellate review of his court-martial.

There are two steps to our analysis. First, we determine whether the delay in this case amounts to a denial of Appellant's due process right to speedy post-trial review and appeal. *Id.* Second, even if we find no due process violation, we also consider whether this court should exercise its power under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to grant relief for excessive post-trial delay. *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002).

The CAAF has identified four factors to consider in determining whether a facially unreasonable post-trial delay amounts to a violation of due process rights: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005), *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 533 (1972)). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

In this case, the length of the delay—approximately three months beyond the 18-month standard established in *Moreno*—was moderate, and weighs moderately in favor of relief. However, the other factors weigh against relief. The primary reasons for the delay were Appellant's nine motions for enlargements of time to file his assignments of error, the majority of which this court granted over the Government's opposition, and the *DuBay* hearing which this court ordered at Appellant's request to investigate his claim of court member misconduct. Appellant's requests for delay ultimately resulted in his corrected assignments of error being filed with this court on 24 October 2016, 454 days after the record of trial was docketed. After the Government timely filed its answer on 21 November 2016, this court ordered the *DuBay* hearing on 6 December 2016. The hearing was held on 14 and 16 February 2017, as described at length above. After transcription and authentication of the *DuBay* proceedings, the case was re-docketed with this court on 6 March 2017. Thus the vast majority of the delay in this case is attributable to enlargements of time and further proceedings requested by Appellant. Appellant's ninth and final motion for enlargement of time includes the bare statement that "Appellant asserts his right to timely appellate review," but he has not otherwise complained of delay or raised the issue on appeal. Similarly, Appellant has asserted no prejudice from the delay; indeed, the *DuBay* hearing he requested enabled the investigation and full consideration of his first assignment of error. Weighing the factors together we find no violation of Appellant's due process right to timely appellate review.

Next we consider whether Article 66(c), UCMJ, relief pursuant to *Tardif* is appropriate. 57 M.J. at 224. Guided by factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016),[9] we find it is not. The delay was only moderate; the reasons for the delay are compelling; we discern no particular harm to Appellant from the delay; the disciplinary effect of the sentence has not been lessened; there is no indication of institutional neglect on the Government's part; and this court's ability to

---

[9] These factors include: (1) how long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, whether there is nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay; (4) Whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline; (5) Whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) Given the passage of time, whether this court can provide meaningful relief in this particular situation. *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

provide meaningful relief, if warranted, was if anything enhanced by affording Appellant an extended amount of time to prepare his assignments of error and by the *DuBay* proceedings. Under these circumstances we find no extraordinary exercise of our Article 66(c) power to modify sentences to be warranted.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court