UNITED STATES, Appellee

v.

Jordan M. PETERS, Specialist
U.S. Army, Appellant

No. 14-0289

Crim. App. No. 20110057

United States Court of Appeals for the Armed Forces

Argued October 21, 2014

Decided February 12, 2015

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN and OHLSON, JJ., joined.  STUCKY and RYAN, JJ., each
filed a separate dissenting opinion.

Counsel

For Appellant:  Captain Payum Doroodian (argued); Colonel Kevin
Boyle and Major Amy E. Nieman (on brief); Major Vincent T.
Schuler and Captain Ian M. Guy.

For Appellee:  Captain Timothy C. Erickson (argued); Colonel
John P. Carrell, Lieutenant Colonel James L. Varley and Major
John Choike (on brief); Captain T. Campbell Warner.

Military Judge:  Mark Bridges

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Chief Judge BAKER delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted Appellant, based on mixed pleas, of drunken operation of a vehicle, causing injury because of that drunken operation, two specifications of involuntary manslaughter, and aggravated assault in violation of Article 111, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 911 (2012); Article 119, UCMJ, 10 U.S.C. § 919 (2012); Article 128, UCMJ, 10 U.S.C. § 928 (2012).[1] He was sentenced to ten years of confinement, forfeiture of all pay and allowances, reduction to the grade of E-1, and a bad-conduct discharge. The convening authority approved the findings and the sentence except for a reduction of the period of confinement to nine years and six months. The United States Army Court of Criminal Appeals affirmed the findings and sentence as approved by the convening authority.

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN DENYING THE IMPLIED BIAS CHALLENGE AGAINST [LIEUTENANT COLONEL COOK], IN LIGHT OF [HIS] PROFESSIONAL RELATIONSHIP WITH TRIAL COUNSEL, THE SPECIAL COURT-MARTIAL CONVENING AUTHORITY, AND THE INVESTIGATING OFFICER.

For the reasons set forth below, we conclude that the military judge abused his discretion when he denied the

---

[1] Appellant was also charged with, and pled not guilty to, one specification under Article 134, UCMJ, 10 U.S.C. § 934 (2012), but the charge was dismissed after the findings of guilty and before the sentence upon a defense motion.

2

challenge for cause against Lieutenant Colonel (LTC) Cook.
There is no per se rule of disqualification when a member knows
or has worked with trial counsel or defense counsel.  Rather,
such relationships are evaluated through the lens of Rule for
Courts-Martial (R.C.M.) 912(f)(1)(N) and the doctrines of actual
and implied bias.  This case is a close case and a rare case
where the record reflects a qualitative bond rising to the level
of implied bias.  Therefore the military judge abused his
discretion by not applying the liberal grant mandate.  Thus, we
reverse.

## Background

Appellant elected to be tried by a panel of both officer
and enlisted members.  One of the officers placed on the panel
was LTC Cook, a battalion commander with the 2nd Brigade Combat
Team, 4th Infantry Division.  Prior to trial, counsel had an
opportunity to voir dire LTC Cook, who disclosed that he had a
professional relationship with Captain (CPT) Krupa, the trial
counsel in this case.  Specifically, CPT Krupa served as a judge
advocate for LTC Cook's brigade.

During voir dire, LTC Cook informed counsel and the
military judge that he sought CPT Krupa's legal advice on a
regular basis, including the night before voir dire, on an
unrelated military justice issue.  LTC Cook was aware that CPT
Krupa was involved with this case when they spoke on the phone

3

and stated that their phone conversation likely ended with the words, "see you tomorrow."

LTC Cook also called CPT Krupa after being summoned to serve on the court-martial panel:

> [LTC Cook:]  [A]s soon as I was notified last week that you know -- I was talking to Captain Krupa again about another legal matter and it was -- I said, "Hey, I've been summoned to be a court-martial panel member for a case that involves the brigade," and Captain Krupa said, "Sir, I'm aware of that, and it's a -- sir, it's not uncommon practice."  I said, "Okay."  Because I was filling out my questionnaire on whether or not I -- to be a court-martial panel member, or assessing, you know, how to deal with my schedule and be able to serve on this court-martial, and so as we discussed an investigation that was under legal review, I did say, "Hey, I've been summoned to be on this court-martial."

During voir dire, LTC Cook also volunteered that he knew Colonel (COL) Kolasheski, the brigade commander who forwarded Appellant's charges for court-martial.  When asked about that relationship, he said that COL Kolasheski was his "rater and boss," but that the relationship would "not affect my ability to be fair and impartial in this case."  Additionally, when asked whether "any member [is] aware of any matter that might raise substantial question concerning your participation in this trial," LTC Cook raised his hand because Major (MAJ) Krattiger, the investigating officer assigned to Appellant's case, was LTC Cook's executive officer (XO).

Appellant objected to LTC Cook's panel membership because of these three relationships.  In opposing the challenge, trial

counsel (CPT Krupa) -- whose own relationship with LTC Cook was in question -- provided what amounted to a personal endorsement of LTC Cook's character as argument that he should remain on the panel:

> [TC:] Colonel Cook is one of the most conscientious and thoughtful commanders within the brigade. . . . He takes this incredibly seriously as evidenced by his answers.

The military judge denied Appellant's implied bias challenge and also relied on LTC Cook's character as the basis for that decision:

> [MJ:] I can't say enough about how I believe that his [LTC Cook's] demeanor, his thoughtful answers to the questions that were asked indicate to me that he is truthful and that he can be an impartial panel member in this case.

In discussing his findings, the military judge also summarily stated that he had considered the legal test for implied bias, including the requirement that the liberal grant mandate be considered:

> [MJ:] Concerning implied bias, implied bias exists if an objective observer would have a substantial doubt about the fairness of this court-martial proceeding. And I think that an objective observer who heard Colonel Cook and saw Colonel Cook responding to the questions of counsel would not have any reason to doubt his impartiality in this case. So, I don't believe that there's actual or implied bias established in this case. And I am considering the liberal grant mandate that the Appellate Courts have asked me to consider in deciding whether or not to grant these challenges. I have considered actual and implied bias with respect to that. And again, I find no reason to grant a challenge for cause against Lieutenant Colonel Cook.

United States v. Peters, No. 14-0289/AR

Standard of Review

We review implied bias challenges pursuant to a standard that is "less deferential than abuse of discretion, but more deferential than de novo review." United States v. Moreno, 63 M.J. 129, 134 (C.A.A.F. 2006); United States v. Napoleon, 46 M.J. 279, 283 (C.A.A.F. 1997). Whereas a military judge can "observe the demeanor of the court members" in order to determine credibility in the case of actual bias, cases of implied bias are based upon an objective test and therefore the military judge is given less deference in such cases. United States v. Miles, 58 M.J. 192, 194-95 (C.A.A.F. 2003).

The military judge is also mandated to err on the side of granting a challenge. This is what is meant by the liberal grant mandate. See United States v. Rome, 47 M.J. 467, 469 (C.A.A.F. 1998). Because "the interests of justice are best served by addressing potential member issues at the outset of judicial proceedings . . . . in close cases military judges are enjoined to liberally grant challenges for cause." United States v. Clay, 64 M.J. 274, 277 (C.A.A.F. 2007). In other words, if after weighing the arguments for the implied bias challenge the military judge finds it a close question, the challenge should be granted. This mandate stems from a long-standing recognition of certain unique elements in the military justice system including limited peremptory rights and the

"'manner of appointment of court-martial members [that] presents perils that are not encountered elsewhere.'" United States v. James, 61 M.J. 132, 139 (C.A.A.F. 2005) (quoting United States v. Smart, 21 M.J. 15, 19 (C.M.A. 1985)). It also serves as a preventative measure because "it is at the preliminary stage of the proceedings that questions involving member selection are relatively easy to rapidly address and remedy." Clay, 64 M.J. at 277.

This Court has previously noted that although it "'do[es] not expect record dissertations'" from the military judge's decision on implied bias, it does require "'a clear signal that the military judge applied the right law.'" Id. (quoting United States v. Downing, 56 M.J. 419, 422 (C.A.A.F. 2002)). Incantation of the legal test without analysis is rarely sufficient in a close case. This is a close case. Where a military judge determines not to grant the challenge, additional analysis on the record will better inform appellate courts in their review and determination as to whether there was an abuse of discretion. Downing, 56 M.J. at 422. We will afford a military judge less deference if an analysis of the implied bias challenge on the record is not provided. See United States v. Bagstad, 68 M.J. 460, 462 (C.A.A.F. 2010) (citing United States v. Richardson, 61 M.J. 113, 120 (C.A.A.F. 2005)).

Implied Bias

R.C.M. 912(f)(1)(N) sets the basis for an implied bias challenge, which stems from the "historic concerns about the real and perceived potential for command influence" in courts-martial. Clay, 64 M.J. at 277. Unlike the test for actual bias, this Court looks to an objective standard in determining whether implied bias exists. United States v. Wiesen, 56 M.J. 172, 175 (C.A.A.F. 2001). The core of that objective test is the consideration of the public's perception of fairness in having a particular member as part of the court-martial panel. Rome, 47 M.J. at 469 (C.A.A.F. 1998). In reaching a determination of whether there is implied bias, namely, a "perception or appearance of fairness of the military justice system," the totality of the circumstances should be considered. United States v. Dale, 42 M.J. 384, 386 (C.A.A.F. 1995). While cast as a question of public perception, this test may well reflect how members of the armed forces, and indeed the accused, perceive the procedural fairness of the trial as well.[2]

---

[2] At times, this Court has also cast the test as one asking "whether most people in the same position would be prejudiced." Wiesen, 56 M.J. at 174 (quoting United States v. Armstrong, 54 M.J. 51, 53-54 (2000) (internal quotation marks omitted). That may well inform the implied bias analysis, but this question is better oriented to objectively evaluate actual bias than to serve as the test for implied bias.

Discussion

In determining whether the military judge abused his discretion, we turn first to his reasoning for denying the causal challenge. The military judge stated for the record that he had considered the mandate to generously grant challenges, but that he found "no reason to grant a challenge for cause." He did not, however, engage the specific grounds for challenge of LTC Cook's panel membership, including his relationship to CPT Krupa. Rather, his reasoning relied solely on LTC Cook's demeanor and thoughtfulness in answering the voir dire questions.

The military judge's reasoning is problematic for two reasons. First, we test for implied bias not on the subjective qualities of the panel member, but on the effect that panel member's presence will have on the public's perception of whether the appellant's trial was fair. Rome, 47 M.J. at 469. Thus, although a panel member's good character can contribute to a perception of fairness, it is but one factor that must be considered in the context of the other issues raised concerning that individual's panel membership. See United States v. Strand, 59 M.J. 455, 459 (C.A.A.F. 2004) ("In making judgments regarding implied bias, this Court looks at the totality of the factual circumstances.").

Second, the well-settled law that requires military judges to consider on the record whether to grant causal challenges exists not merely to have the words of the test preserved on the record, but to show that the grounds for the challenge were given serious and careful consideration in the first instance. Downing, 56 M.J. at 422 ("[W]here the military judge places on the record his analysis and application of the law to the facts, deference is surely warranted."). Although the military judge here said he was considering the mandate, the record does not provide further analysis as to why, given the specific factors in this case, the balance tipped in favor of denying the challenge. We therefore turn next to those specific factors to analyze whether, although absent from the military judge's reasoning on the record, they support the finding that there were no grounds for granting the implied bias challenge.

The Government rightly points out, and this Court well recognizes, that military communities and units are close-knit. Relationships among panel members and others involved in the case are unavoidable. We recognize it is not uncommon, nor inappropriate, for a panel member to be acquainted professionally with other individuals involved in the trial. As a result, there is no per se disqualification in circumstances where a member of a panel knows or has worked with trial counsel or defense counsel. United States v. Hamilton, 41 M.J. 22, 25

10

(C.M.A. 1994).  At the same time, M.R.E. 912 generally, and the Military Judges' Benchbook specifically, directs counsel and military judges to explore such contacts, to ensure that they are not qualitatively of a sort that reflects the kind of bond that would undermine the fairness of a proceeding or raise the prospect of appearing to do so.  See Richardson, 61 M.J. at 119 (C.A.A.F. 2005) (the Court recognized the "qualitative nature of the relationships between trial attorneys and officers in the commands those attorneys advise" and thus emphasized "the importance of thorough voir dire in such circumstances"); Bagstad, 68 M.J. at 463 (Baker, C.J., dissenting, with whom Erdmann, J., joined); cf. Strand, 59 M.J. at 459 (the Court was "satisfied" with the "deliberate manner of the military judge's voir dire" and thus did not find an abuse of discretion).

When considering all the factors, this is a case where LTC Cook's relationship to CPT Krupa could undermine the perception of fairness in the proceedings.  LTC Cook regularly relied upon CPT Krupa for legal advice on military justice matters.  He trusted that legal advice and believed that CPT Krupa did good work as a lawyer.  As soon as LTC Cook was summoned to be a court-martial panel member in this case, he sought CPT Krupa's input about whether it was common that someone from within the brigade serve on a panel.  Despite knowing that he would be serving as a panel member in CPT Krupa's case, LTC Cook also

11

called CPT Krupa the night before voir dire. They did not talk about Appellant's case, but they did sign off the conversation by saying "see you tomorrow." Finally, in objecting to Appellant's causal challenge, CPT Krupa relied upon his personal knowledge of LTC Cook's character to argue on behalf of keeping him on the panel. While the appearance would be more problematic were the member to have shown special trust and confidence in the integrity of the trial counsel, rather than trial counsel in the member, CPT Krupa's "testimonial" on behalf of LTC Cook raised the appearance that there was a qualitative bond between counsel and member that could undermine perceptions of fairness. None of which is to suggest either officer did anything wrong. We should want and wish for especially strong bonds between judge advocates and the commanders they advise, provided such bonds do not carry over or appear to carry over into the trial proceedings.

The test for implied bias, however, is not whether the panel member is subjectively a person of good character. See Miles, 58 M.J. at 194-95. Rather, we are concerned with how the public would perceive the fairness of a trial when, in this case, the panel member's relationship to trial counsel exceeds the norm. Thus, the effect of CPT Krupa's personal appeal to LTC Cook's character in opposing the implied bias challenge, in addition to the close working relationship and phone calls

12

between the two, did not serve to overcome the issue of implied bias, but rather highlighted the grounds for why, in this case, the public would question the fairness of Appellant's trial.

A professional relationship between a panel member and trial counsel is not per se a ground for granting an implied bias challenge. Here, however, the totality of the factors support the conclusion that Appellant had good grounds for challenging LTC Cook's membership based on implied bias. LTC Cook and CPT Krupa's relationship went beyond what would be perceived as fair to an appellant in the context of a typical court-martial.[3]

## Conclusion

Therefore, in this case, where the military judge did no more than invoke the implied bias doctrine and where the facts otherwise show an unusually strong bond between trial counsel and a member of the panel, we conclude that the military judge abused his discretion in not erring on the side of caution and excusing LTC Cook on the ground of implied bias. The decision of the United States Army Court of Criminal Appeals is reversed,

---

[3] As a result, we note, but do not ultimately address the two additional grounds for the implied bias challenge: COL Kolasheski, who forwarded the charges, was LTC Cook's "rater" and MAJ Krattiger, the investigating authority in the case, was LTC Cook's XO. Although perhaps individually neither of these relationships would provide a sufficient ground on which to grant an implied bias challenge, their existence does contribute to the totality of the factors considered in determining that the challenge against LTC Cook should have been granted.

and the findings and sentence are set aside.  The record of trial is returned to the Judge Advocate General of the Army.  A rehearing may be authorized.

United States v. Peters, No. 14-0289/AR

STUCKY, Judge (dissenting):

The military judge did not err in declining to grant the challenge for cause against LTC Cook. In the first place, the judge did significantly more than simply invoke the liberal grant mandate on the record; he discussed LTC Cook's responses to voir dire and analyzed his demeanor and impartiality in denying the challenge. Consequently, his analysis is entitled to deference. See United States v. Clay, 64 M.J. 274, 276 (C.A.A.F. 2007).

Second, the military judge's decision was the correct one. It is settled that "'implied bias should be invoked rarely.'" Id. at 277 (quoting United States v. Leonard, 63 M.J. 398, 402 (C.A.A.F. 2006)); see also United States v. Lavender, 46 M.J. 485, 489 (C.A.A.F. 1997) ("[A]ppellant did not carry his burden at trial of showing that his case is the 'rare exception' justifying use of the implied-bias doctrine."). In United States v. Downing, this Court upheld a military judge's denial of a challenge for implied bias against a member who was a professional colleague and friend of trial counsel, noting that an objective observer could distinguish between that relationship and one between "individuals whose bond of friendship might improperly find its way into the members' deliberation room." 56 M.J. 419, 423 (C.A.A.F. 2002).

There is no evidence in this case that the trial counsel and LTC Cook were personal friends, or that there existed any special bond between them that might undermine the fairness of this court-martial.  In a year's time, trial counsel had advised LTC Cook only "[a] dozen" times.  They never discussed Appellant's case substantively.  Further, LTC Cook specifically affirmed at voir dire that his relationship with trial counsel "will not affect my ability to be fair and impartial in this case."  These facts establish that the relationship consisted of "formal and professional" contact "not indicative of special deference or bonding," and that it was therefore permissible for LTC Cook to sit on the panel.  United States v. Richardson, 61 M.J. 113, 119 (C.A.A.F. 2005).

The majority states that because LTC Cook trusted the advice of trial counsel, we should question LTC Cook's judgment and impartiality.  United States v. Peters, __ M.J. __, __ (11-12) (C.A.A.F. 2015).  It also relies on the words, "see you tomorrow," as evidence of bias, as though the sign-off statement -- following a discussion of business matters -- was indicative of special deference or bonding.  Id. at 12.  And the majority strongly criticizes trial counsel's endorsement of LTC Cook's character.  Peters, __ M.J. at __ (5, 12).  But the military judge explicitly and correctly disavowed consideration of trial counsel's endorsement, interrupting him to say:  "Captain Krupa,

2

I'm going to stop you there.  We're not going to consider things that haven't been admitted in this court, okay.  Your own, outside of court, understanding of Colonel Cook is not relevant."  Rejecting trial counsel's assessment of LTC Cook, the military judge made his own assessment of LTC Cook's demeanor and responsiveness to voir dire questions, and decided to deny the challenge accordingly.

I also do not see how trial counsel's relationship with the panel member in this case is distinguishable from that in United States v. Castillo, __ M.J. __ (C.A.A.F. 2015).  There, the trial counsel served with and provided military justice assistance to each of the four challenged members.  See id. at __ (3-6).  One member met regularly with trial counsel to discuss ongoing military justice matters within his battalion.  Another consulted with trial counsel regarding an officer separation board resulting from allegations of larceny and rape.  Both viewed trial counsel's legal advice to be sound.  The majority has not explained why the relationship in Peters "exceeds the norm," __ M.J. at __ (12), whereas the relationships in Castillo were so minor as to merit little mention of their relevance to implied bias challenges.  Castillo, __ M.J. at __ (9).

Finally, the majority appears to expand the ambit of the "public perception" test contrary to our case law by writing

that the implied bias test "may well reflect how members of the armed forces, and indeed the accused, perceive the procedural fairness of the trial as well." Peters, __ M.J. at __ (8). The accused's perception of the fairness of his trial has never been part of the implied bias test.

I agree that it is proper for counsel and military judges to explore professional contacts between panel members and trial or defense counsel, id. at __ (10-11), and in other circumstances such relationships might result in findings of implied bias. But this is not such a case. Under these circumstances, a public observer familiar with the military justice system would not doubt the fairness of the trial solely because of this professional relationship. I would affirm.

<u>United States v. Peters</u>, 14-0289/AR

RYAN, Judge (dissenting):

I agree with Judge Stucky that the military judge recognized and applied the correct law and engaged in voir dire to explore the relationship between trial counsel and the challenged member.  Under our precedent he, therefore, did not abuse his discretion.  <u>United States v. Clay</u>, 64 M.J. 274, 277 (C.A.A.F. 2007); <u>United States v. Napoleon</u>, 46 M.J. 279, 283 (C.A.A.F. 1997).  Although one might, as the majority does, conclude that another course of action would have been more appropriate, de novo review has never before been the standard of review where the military judge clearly recognized the correct law and made no erroneous factual determination.  <u>See, e.g.</u>, <u>United States v. Armstrong</u>, 54 M.J. 51, 54 (C.A.A.F. 2000).  It is unclear to me what level of excruciating detail the majority now requires of the trial judiciary when denying a member challenge.  They do not have the luxury of time afforded appellate courts.

While a bright-line rule excluding members on the basis of implied bias where the trial counsel has advised the member might, as an empirical matter, be viewed as only fair by an objective member of the public, we rejected such a rule long ago.  <u>United States v. Rome</u>, 47 M.J. 467, 469 (C.A.A.F. 1998) (holding a member's "professional relationship with the trial counsel was not <u>per se</u> disqualifying"); <u>United States v.</u>

Hamilton, 41 M.J. 22, 25 (C.M.A. 1994) (finding no "per se ground for challenge" where three members had received legal assistance from the assistant trial counsel); see also United States v. Castillo, __ M.J. __, __ (1-2) (C.A.A.F. 2015) (Ryan, J., concurring in the result).

I respectfully dissent.