# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201600158

————————————

## UNITED STATES OF AMERICA
Appellee

v.

## RANDALL C. WOODY
Corporal (E-4), U.S. Marine Corps
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Mark D. Sameit, USMC.
Convening Authority: Commanding General,
3d Marine Aircraft Wing, MCAS Miramar, San Diego, CA.
Staff Judge Advocate's Recommendation: Colonel Daren K. Margolin, USMC.
For Appellant: Major Benjamin A. Robles, USMC.
For Appellee: Lieutenant Jetti L. Gibson, JAGC, USN; Lieutenant James M. Belforti, JAGC, USN.

————————————

Decided 15 August 2017

————————————

Before MARKS, RUGH, AND JONES, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

JONES, Judge:

At a contested general court-martial, members with enlisted representation convicted the appellant of sexual assault, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. The convening authority (CA) approved the adjudged sentence of fifty-four months' confinement, total forfeitures, reduction to pay grade E-1, and a dishonorable discharge.

The appellant raises three assignments of error (AOEs): (1) the military judge erred by failing to suppress the appellant's unwarned responses to questions by the officer searching

his home for evidence of a sexual assault;[1] (2) the military judge erred by denying the defense's challenge for cause of Master Sergeant (MSgt) J.F.K.;[2] and, (3) the military judge committed plain error by instructing the members, "If, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of the crime charged, you must find him guilty."[3] We disagree with AOEs (1) and (2), and, finding no error materially prejudicial to the substantial rights of the appellant, we affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

On 4 July 2014, A.M.B. attended a party at the appellant's home. A.M.B. was 19 and married to a deployed Marine. That night, A.M.B.—a novice drinker—consumed several mixed drinks and shots until she became sick and vomited on the floor. The appellant saw her sitting on the floor outside the bathroom, helped her up, and led her to his bedroom where he laid her on his bed. A.M.B. immediately fell asleep.

A.M.B. awoke when she felt someone put a hand on her leg and fingers inside of her vagina. She tried to "swat" the person away, telling him to "stop," but her "arms felt so heavy like [she] couldn't do anything," and then she "blacked back out."[4] She awakened sometime later to feel someone taking off her pants and inserting his tongue in her vagina. This was followed by the person lying on top of her, and "putting his tongue in [her] mouth and then his penis was inside of [her] vagina."[5] The next thing she remembered was the person "lifting [her] legs and putting [her] pants back on."[6] Lastly, she remembered someone coming in one more time and digitally penetrating her. She never saw the face of the person who assaulted her; however, the appellant was seen going in and out of the room multiple times throughout the night. The next day, A.M.B. reported the incident to authorities and participated in a sexual assault examination where DNA samples were obtained. Forensic analysis revealed the appellant's DNA on the inside and outside of A.M.B.'s vagina.

The day after the party, two investigators from the Naval Criminal Investigative Service, arrived at the appellant's home to document the crime scene. Agent L.S.[7] requested

---

[1] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] *Id.*

[3] Record at 349. Having been resolved by our superior court in *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017), we summarily reject the third assigned error. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

[4] Record at 203.

[5] *Id.* at 204.

[6] *Id.*

[7] Agent L.S. was not a Naval Criminal Investigative Service Special Agent; she was an agent on loan from the Criminal Investigative Division.

consent from the appellant to search his home, which he granted. During this initial introduction, the appellant spontaneously volunteered that: he was a "nervous wreck and that he felt he was somehow responsible since it happened within his residence[;]" he knew that he was the "No. [sic] 1 suspect;" and that all he had done was "check[] on [A.M.B.] the whole night just so she didn't choke on her vomit."[8] As the agents processed the crime scene, they did not seek any conversation with the appellant, but he repeatedly denied his guilt to them. Then, as Agent L.S. was leaving, she asked the appellant for his signature to close out the permissive search and asked him if he had any questions. The appellant responded by asking her a series of questions about DNA collection and examination—which the agent indicated she could not answer—and then again stated he was nervous "because he shed like a mother f***** and he was afraid that since A.M.B. slept in his bed, what if his hair was all up in her."[9]

## II. DISCUSSION

### A. Suppression of statements

The appellant claims his statements made to Agent L.S. during the crime scene investigation should be suppressed because she had a duty to read him his rights. We disagree.

The military judge determined that because Agent L.S. did not suspect the appellant of committing the offense and never asked him any questions seeking to elicit an incriminating response, she had no duty to read him his rights. The military judge concluded:

> [Agent L.S.] did not suspect Cpl Woody of an offense on 5 July 2014. All she knew was that an allegation of sexual assault had been made and that it was alleged to have occurred in Cpl Woody's bedroom. The Woodys had been having a party the day before, many people were in the house, and at that time [Agent L.S.] had no reason to suspect that Cpl Woody was involved in the alleged offense.

> Further, [Agent L.S.] never interrogated Cpl Woody. She asked him for permission to search the house and he made spontaneous statements concerning being nervous. When the search concluded, she approached Cpl Woody for the ministerial task of putting his initials on the PASS [Permissive Authorization for Search and Seizure]. She told him the search was concluded and asked if he had any questions. At no time did [Agent L.S.] ask Cpl Woody for information concerning the alleged offense or make any statements in an effort to have Cpl Woody provide incriminating responses.

---

[8] Record at 193.

[9] *Id.* at 194.

> Her statements likewise would not reasonably be expected to result in an incriminating response.
>
> [Agent L.S.] was clearly in the home purely to conduct her assigned duties of collecting physical evidence and did not suspect Cpl Woody of an offense or interrogate him concerning the allegation.[10]

"We review a military judge's ruling on a motion to suppress . . . for an abuse of discretion. . . . The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. . . . When there is a motion to suppress a statement on the ground that rights' warnings were not given, we review the military judge's findings of fact on a clearly-erroneous standard, and we review conclusions of law de novo." *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014) (citations and internal quotation marks omitted).

Article 31(b), UCMJ, warnings are required when (1) a person subject to the UCMJ, (2) interrogates or requests any statement, (3) from an accused or person suspected of an offense, and (4) the statements regard the offense of which the person questioned is accused or suspected. *United States v. Cohen*, 63 M.J. 45, 49 (C.A.A.F. 2006).

The appellant fails prongs two and three. First, there is no evidence Agent L.S. suspected the appellant prior to leaving his home. The military judge found that Agent L.S. was there only to process evidence from a potential crime scene, not to interrogate the appellant. The fact that the appellant was nervous about the incident happening at his home does not mean Agent L.S. suspected him of a crime. We do agree with the military judge's conclusion that Agent L.S. "began to suspect that [the appellant] might have been involved in the alleged sexual assault" *after* the appellant asked questions about DNA and commented regarding his hair being found *inside* A.M.B. But at that point, Agent L.S. immediately left the home without asking any questions.

Second, Agent L.S. never interrogated the appellant by asking questions to elicit an incriminating response. She was there to process the crime scene, not to interrogate anyone. The record shows that Agent L.S. asked the appellant for little more than consent to search the residence and whether he had any questions when she was performing the final ministerial task of getting him to initial the consent form. Even if Agent L.S. suspected the appellant, offering to answer his questions is not seeking an incriminating response.[11] All of the appellant's statements were spontaneous, and not the result of any

---

[10] Appellate Exhibit (AE) XXXVII at 3-4.

[11] Even had she informed him of what he was suspected of, she would not have been required to give him his Article 31(b), UCMJ, rights. *See United States v. Ruiz*, 54 M.J. 138, 142 (C.A.A.F. 2000) (merely informing a person of what he is suspected of does not mandate an Article 31, UCMJ, rights' advisement).

coercion on the part of the agent.[12] The military judge's findings of fact are supported by the record and not clearly erroneous, and her application of the law is correct.

## B. Denial of challenge for member

RULE FOR COURTS-MARTIAL 912(f)(1)(N), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), provides that a court-martial panel member shall be excused for cause whenever it appears the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This rule applies to both actual and implied bias. *United States v. Daulton*, 45 M.J. 212, 216-17 (C.A.A.F. 1996).

"The military judge is also mandated to err on the side of granting a challenge. This is what is meant by the liberal grant mandate." *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015) (citation omitted). Here, the military judge applied the liberal grant mandate but denied the challenge for cause for MSgt J.F.K. He denied there was any actual bias, and ruled there was no implied bias because there were no "circumstances [that would do] injury to the perception of appearance of fairness in the military justice system."[13] We agree.

During group voir dire, the military judge asked, "Do any of you believe that the military has a problem with sexual assault that must be fixed?"[14] MSgt J.F.K. answered in the affirmative. When later asked to explain his answer, the member indicated that he had been to sexual assault training, seen statistics of how many sexual assaults were reported, and added "if we're given the training . . . then I guess there's a problem."[15] He later stated that after all of the training, it ultimately comes down to a person's character. When asked if he could set aside anything he learned in training and give the appellant a fair trial, he stated he could. In response to another statement by MSgt J.F.K.—involving a person's character—the military judge ensured he could give the appellant a fair trial even if people were drinking at the appellant's home when the incident occurred.

The military judge found that MSgt J.F.K.'s prior sexual assault training would not improperly inform his decisions in court:

> [A]ll that he remembers . . . in his training, is that he was briefed on the number of [sexual assault] cases that were reported in the military. He didn't remember any sort of statistics. . . .

---

[12] The appellant does not argue coercion or custodial interrogation and we find no evidence of either.

[13] Record at 154.

[14] *Id.* at 94.

[15] *Id.* at 134.

And as far as SAPR [Sexual Assault Prevention and Response] training goes, he had very generic answers that—about bystander intervention and expecting Marines to do the right thing, which is the same thing every senior Marine leader would expect in these cases. There was no sort of inference that [the appellant] did or did not do the right thing in this case. . . .

He's independent. He's not part of the chain of command. He doesn't have any specialized training. . . . He did not have any predisposition to finding guilty or not guilty in this case.[16]

MSgt J.F.K. also stated that there are "always two sides to the story," and that he likes to hear both sides of an issue before he makes up his mind.[17] This comment prompted the parties to ask follow-up questions regarding the government's burden of proof, the absence of a burden on the defense, and the presumption of innocence. In response, MSgt J.F.K. stated he understood the burden of proof was never on the defense, and would hold the government to their burden of proof even if the defense presented no evidence. The military judge found MSgt J.F.K. was not predisposed toward either side and was determined to keep an open mind until all of the evidence was presented:

Your average member doesn't have a good understanding of a court-martial process. . . . His demeanor appeared very thoughtful, very candid. . . . [H]e kept saying, "There are two sides to every story. I can't make any determinations until I actually hear the evidence. . . ."

He wasn't going to assume that [the appellant] was guilty one way or the other, but he made it very clear that he wanted to hear the evidence. . . . [and that] if the prosecution did not prove their case beyond a reasonable doubt, he would . . .find[] [the appellant] not guilty . . . . [J]ust like any normal member . . . [he] would want to hear from [the appellant]. Most people when they make decisions . . . get to hear both sides. The court-martial process being unique, he understood that if the defense did not put on any evidence, he would still hold the burden to the government [sic]."[18]

*1. Actual bias*

"The test for actual bias is whether any bias is such that it will not yield to the evidence presented and the judge's instructions." *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) citation and internal quotation marks omitted). "Military judges are afforded a high degree of deference on rulings involving actual bias[,]" *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015), and will only be overturned for an abuse of discretion. *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A. 1987). The military judge's ability to watch the

---

[16] *Id.* at 154-55.

[17] *Id.* at 137.

[18] *Id.* at 153-54.

challenged member's demeanor during the voir dire process makes him specially situated to make factual determinations when assessing actual bias. *Terry*, 64 M.J. at 302.

The military judge observed the demeanor of the member to be "very thoughtful, very candid."[19] In other words, he noted the judicial temperament of the member as being favorable to keeping an open mind until all of the evidence had been submitted. He was convinced the member understood the burden of proof, would hold the government to that burden—without the defense producing any evidence, was not improperly influenced by prior annual sexual assault training, and would follow his instructions on the law. The military judge did not abuse his discretion in finding no actual bias in MSgt J.F.K.

*2. Implied bias*

"Implied bias exists when most people in the same position as the court member would be prejudiced. . . . It is evaluated objectively under the totality of the circumstances and through the eyes of the public, reviewing the perception or appearance of fairness of the military justice system. . . . The core of that objective test is the consideration of the public's perception of fairness in having a particular member as part of the court-martial panel." *United States v. Dockery*, 76 M.J. 91, 96, (C.A.A.F. 2017) (citations and internal quotation marks omitted).

"We review implied bias challenges pursuant to a standard that is less deferential than abuse of discretion, but more deferential than de novo review. . . . Whereas a military judge can observe the demeanor of the court members in order to determine credibility in the case of actual bias, cases of implied bias are based upon an objective test and therefore the military judge is given less deference in such cases." *Peters*, 74 M.J. at 33 (citations and internal quotation marks omitted).

To a disinterested observer, there was nothing MSgt J.F.K. said to indicate he would be partial to the government. His initial difficulty in explaining—or even misinterpreting—the proper burden of proof in a criminal trial without more, does not require a finding of implied bias. *See Woods*, 74 M.J. at 244.

This case is readily distinguishable from the *Woods* case, wherein the Court of Appeals for the Armed Forces found that the military judge erred in denying a defense challenge for cause of the senior member of the panel on grounds of implied bias. In *Woods*, (1) the member put on her preliminary member's questionnaire her belief that "the enforcement of 'you are guilty until proven innocent' (just the opposite as in the civilian sector) is essential because the military needs to be held to a higher standard just for reasons of our mission[;]" and (2) during voir dire, her elaborations on this response were confusing rather than clarifying. *Id.* at 240-241. Here, MSgt J.F.K.'s initial difficulty in communicating his understanding of the burden of proof, and his desire to hear both sides of the story before making up his mind, are quite distinct from the facts in *Woods*, where there was inadequate rehabilitation of the senior member who believed persons in the military give

---

[19] *Id.* at 153.

up their civil rights and are presumed guilty so the military can accomplish its mission. *Id.* at 244.

The military judge must consider the totality of the factual circumstances in deciding to grant a challenge under the implied bias test. *United States v. Strand,* 59 M.J. 455, 459 (C.A.A.F. 2004). But, even considering the totality of the circumstances and the liberal grant mandate, the military judge's denial of the challenge for cause for MSgt J.F.K. was not a close call. Anyone in the same position as the member would not be prejudiced, and leaving MSgt J.F.K. on the panel did no injury to the public's perception of fairness of the military justice system.

Although less deference is given for challenges involving implied, vice actual, bias, we find the military judge did not abuse his discretion in finding no implied bias for MSgt J.F.K.

## C. Error in the court-martial order (CMO)

Although not raised by the parties, we note that the CMO fails to correctly identify the specification of the Charge as consolidated by the military judge. After the members found the appellant guilty of both sexual assault and abusive sexual contact of A.M.B., the military judge consolidated the two specifications for purposes of both findings and sentencing.[20] The appellant is entitled to have the CMO accurately reflect the results of the proceedings. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). We thus order corrective action in our decretal paragraph.

### III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed. The supplemental CMO shall correctly reflect the specification of the Charge, as consolidated:

> In that Corporal Randall C. Woody, United States Marine Corps, Marine Fighter Attack Squadron 121, 3d Marine Aircraft Wing, Marine Corps Air Station Yuma, Arizona, on active duty, did, on divers occasions, on board Marine Corps Air Station Yuma, on or about 5 July 2014, (1) commit a sexual act upon A.M.B., to wit: penetrating A.M.B.'s vulva with his finger, tongue, and penis by causing bodily harm to A.M.B., to wit: the offensive touching of another, however slight, including any nonconsensual sexual act; and (2) commit abusive sexual contact upon A.M.B., to wit: touching directly the vulva of A.M.B. when A.M.B. was incapable of consenting to the sexual contact because she was impaired by an intoxicant, to wit: alcohol, and this condition was known or reasonably should have been known by Corporal

---

[20] AE XXV; Record at 397.

Randall C. Woody, United States Marine Corps, with an intent to gratify the sexual desire of Corporal Randall C. Woody, United States Marine Corps.

Senior Judge MARKS and Judge RUGH concur.

For the Court

R. H. TROIDL
Clerk of Court