*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, STEWART, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Derrick D. BERRIAN**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 201900310**

Decided: 22 March 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Nute A. Bonner (arraignment)
Peter A. McNeely (motions)
Wilbur Lee (trial)

Sentence adjudged 26 July 2019 by a special court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-1, confinement for 6 months, and a bad-conduct discharge.

For Appellant:
*Major Thomas R. Fricton, USMC*
*Lieutenant Megan E. Horst, JAGC, USN*

For Appellee:
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under NMCCA
Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

Appellant was convicted, contrary to his pleas, of one specification of assault consummated by battery, in violation of Article 128, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 928, for striking his wife on the head with his hand.[1]

Appellant asserts two assignments of error [AOE]: (1) that the military judge abused his discretion by denying a challenge for cause for implied bias of a potential member with extensive experience as a victim advocate and (2) that it was plain error to admit a hearsay statement as a prior consistent statement. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant was charged with physically abusing his wife, Mrs. Beta,[2] over a 12-month period. At trial, the central defense was to attack the wife's credibility, with the evidence raising at least two distinct motives to fabricate. First, after reporting two abusive events in 2017, Mrs. Beta told a Family Advocacy Program counselor that she had lied to the police regarding these earlier assaults, and that she did so seeking revenge against Appellant for his threatening to give away their dog. Second, shortly after the last charged assault, Mrs. Beta gave birth to the couple's only child. The question of who would have primary custody of the child was pending during Appellant's court-martial. Mrs. Beta wanted custody of their child so she could return with the child to her home in Japan.

_____

[1] Appellant was acquitted of four other specifications alleging similar assaults and battery of his wife.

[2] All names used in this opinion, except those of the judges, counsel, and Appellant, are pseudonyms.

Of the five assaults alleged, only one—the one of which Appellant stands convicted—was supported by evidence independent of the victim's statements. On that occasion, in May 2018, Appellant struck his wife repeatedly on the head, causing bruises. The next day or day after, Mrs. Beta travelled across town to her friend's home where she had stayed once following an earlier alleged assault. At trial, the friend, Ms. Bravo, testified she was surprised that Mrs. Beta had arrived unannounced, and that the latter appeared "tired" and "depressed."[3] She also stated she saw bruising on Mrs. Beta's right ear. She further testified that when Mrs. Beta entered her home, she told Ms. Bravo, "He [Appellant] did it again."[4]

During the voir dire process, Appellant's trial defense counsel [TDC] challenged five potential members for actual bias, implied bias, or both. Of these challenges, the military judge granted three, but denied TDC's challenges of First Sergeant Charlie and Gunnery Sergeant [GySgt] Sierra. First Sergeant Charlie, challenged for implied bias based on her official interactions with the convening authority and her supervisory relationship to other potential members, was later struck peremptorily by TDC. However, GySgt Sierra, challenged for both actual and implied bias based on her extensive experience as a victim advocate, served as a member of the assembled court-martial.

Additional facts necessary to resolve the AOEs are addressed below.

## II. DISCUSSION

### A. Did the Military Judge Abuse his Discretion in Denying TDC's Challenge of GySgt Sierra for Implied Bias?

We review rulings on challenges for implied bias "under a standard less deferential than abuse of discretion but more deferential than de novo." *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002) (citations omitted). This standard recognizes that implied bias deals with the public's objective perception of the fairness of the military justice system, and not simply the military judge's assessment of whether a challenged member can serve in a fair and impartial manner. *See United States v. Elfayoumi*, 66 M.J. 354 (C.A.A.F. 2008). In applying this standard, we look to the totality of the circumstances. *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012). We will give greater deference where a military judge puts on the record his analysis

---

[3] R. at 435.

[4] *Id.* at 436.

and basis for denying a defense challenge for cause and indicates that he considered the liberal grant mandate. *United States v. Dockery*, 676 M.J. 91, 96 (C.A.A.F. 2017); *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007). The liberal grant mandate requires the military judge to err on the side of granting a defense challenge. *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015) (citation omitted). That is, "if after weighing the arguments for the implied bias challenge the military judge finds it a close question, the challenge should be granted." *Id.*

During voir dire, GySgt Sierra described her experience as a victim advocate supporting alleged crime victims. This included serving as a victim advocate in her previous three commands, beginning when she volunteered to be a victim advocate in 2013. She was assigned as a victim advocate in her two subsequent tours, and maintained her required credentialing throughout. Over the six years in question, she attended an initial week-long victim advocate training class and received approximately 32 hours of additional training annually. In the same period she handled between 40 and 50 cases, some involving domestic violence. Also, in her first tour she was the battalion legal chief.

When asked by the military judge whether her experience had caused her to develop any biases "in favor of the victim's perspective,"[5] GySgt Sierra explained that her victim advocate training made clear that "offenders are . . . [a]lleged offenders until proven guilty."[6] In response to TDC's questions regarding her attitude toward victims' veracity, she stated: "[A]s a victim advocate, it's not my job to believe or disbelieve a victim. It's my job to provide services."[7] GySgt Sierra also described her personal experience when her brother was falsely accused of domestic violence, saying, "he was arrested for something that I witnessed didn't happen."[8] He was acquitted based, in part, on GySgt Sierra's testimony; she stated she "felt like justice was served."[9]

The TDC challenged GySgt Sierra on the grounds of both actual and implied bias, citing her extensive victim advocate experience and training, and her desire to maintain her victim advocate certification. The military judge

---

[5] *Id.* at 263

[6] *Id.*

[7] *Id.* at 266

[8] *Id.* at 256.

[9] *Id.* at 255

denied the challenge, finding neither actual nor implied bias. He explained his ruling on actual bias as follows:

> When [GySgt Sierra] was asked whether her job was to be-lieve victims, she, without hesitation and in a very matter of fact manner, said, "It's not my job to believe or disbelieve. . . ." She also, without any prompting, made it a point to refer to anybody accused of offenses . . . as "alleged accused" or "alleged offenders." . . . It is important to see how her experiences [with her brother being falsely accused] have shaped her view, and she, kind of, confirmed that through her answers with regard to how she views her role as a victim advocate.[10]

The military judge cited the same reasons when ruling on the challenge for implied bias, and found that "a member of the public's view of [GySgt Sierra] and her ability to sit on this court-martial should be influenced by the fact that she is not there to make a case for a victim that she is serving as a uniformed victim advocate."[11] And, "she did not define 'justice' as a result in favor of one side or the other."[12] He concluded: "So, for those reasons, again, keeping in mind the liberal grant mandate, the Court finds that there's no actual or implied bias, and that keeping in mind the liberal grant mandate, I'm still going to go ahead and deny the Defense's challenge with regard to [GySgt Sierra]."[13]

The following day, during an Article 39(a), UCMJ, hearing, the military judge revisited his decision. After reiterating his rationale in a bit more detail, he said: "Again, it's not a close call in my view, based on the facts, my observations of her as—during the voir dire, and it did not trigger the application of the liberal grant mandate."[14]

While experience serving as a victim advocate is not per se basis for re-moval, GySgt Sierra's extensive training and experience, in the absence of other pertinent information, could certainly support a finding of implied bias. *See United States v. Lugo*, No. 201200102, 2013 CCA LEXIS 40 (N-M Ct. Crim. App. Jan. 29, 2013) (unpublished). But there is more to the matter in

---

[10] *Id*. at 300-01.

[11] *Id*. at 302.

[12] *Id*.

[13] *Id*. at 302-03.

[14] *Id*. at 318-19.

this case, and the military judge properly put on the record that he considered it. The military judge found that GySgt Sierra's forthright responses describing her role and attitude as a victim advocate, combined with her personal experience with a close family member being falsely accused of domestic violence, clearly outweighed any negative effect her substantial victim advocate service may have on the public's perception of the fairness of military justice and Appellant's trial. We agree.

In his brief, Appellant makes much of the military judge's statement that the decision was "not a close call" and "did not trigger the application of the liberal grant mandate," claiming this shows the military judge applied an erroneous view of the law.[15] Appellant interprets this statement to mean that the military judge did not "apply" the liberal grant mandate to the subject challenge for cause, despite that the mandate must be considered with every defense challenge. But this interpretation fails in light of the entire record.

The military judge cited the liberal grant mandate numerous times while explaining his rulings on challenges for cause.[16] The record clearly establishes that the military judge understood and considered the liberal grant mandate in regard to the Defense's challenges. It is also clear to us that his language regarding "close calls" and the "applicability" of the mandate properly, if perhaps inarticulately, reflected our superior court's explanation in *Peters* that the liberal grant mandate means that judges should grant challenges when "the military judge finds it a close question." It does not mean that military judges must grant defense challenges when clearly not warranted. We find no error in the military judge's denial of the Defense challenges in this case.

**B. Was it Plain Error for the Military Judge to Admit the Victim's Statement through Ms. Bravo?**

Appellant asserts it was plain error for the military judge to admit Mrs. Beta's statement to Ms. Bravo, which was not objected to at trial. Failure to object to the admission of a prior consistent statement constitutes waiver of any error in the absence of plain error. *United States v. Toro*, 37 M.J. 313, 316 (C.A.A.F. 2006) (citing *United States v. Olano*, 507 U.S. 725 (1993); *United States v. Fisher*, 21 M.J. 327 (CMA 1986)). Plain error exists when: (1) there was error; (2) the error was plain or obvious; and (3) the error

---

[15] Appellant's brief at 11-13.

[16] The military judge referred to the liberal grant mandate at least seven times, including three times specifically in regard to the challenge of GySgt Sierra.

materially prejudiced a substantial right of the accused. *United States v. Powell*, 49 M.J. 460, 463-65 (C.A.A.F. 1998).

At trial, the Government offered Ms. Bravo's testimony that Mrs. Beta told her "He did it again"—which Ms. Bravo took to mean that Appellant had struck his wife again—as a prior consistent statement under Military Rule of Evidence 801(d)(1)(B)(i). Under this rule, a witness' prior consistent statement is not hearsay when offered to rebut an express or implied charge of recent fabrication or improper influence or motive. As non-hearsay, the statement, if it is otherwise admissible, comes into evidence on the merits, in addition to rehabilitating a witness's credibility. *United States v. McCaskey*, 30 M.J. 188, 191 (C.M.A. 1990). To be admissible non-hearsay under the rule, the statement must predate the alleged recent fabrication or the improper influence or motive. *Tome v. United States*, 513 U.S. 150, 158 (1995); *McCaskey*, 30 M.J. at 192. When more than one improper motive or influence is alleged, the "statement need not precede all such motives or inferences; but only the one it is offered to rebut." *United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998) (emphasis added).

The evidence at trial established at least two distinct potential motives for Mrs. Beta to fabricate. First, she admitted that she lied about being abused by Appellant in 2017 because she wanted revenge for his threats to "sell or . . . get rid of" their dog.[17] Second, their child was born shortly after the last alleged assault, and Mrs. Beta was seeking primary custody of the child in their pending divorce. The TDC laid foundations for both motives during cross-examination of Mrs. Beta. The Defense specifically established through Mrs. Beta that she discussed custody issues with Appellant's Family Readiness Officer, GySgt Golf, after the last alleged assault. And the Defense called GySgt Golf as a witness to establish that she had expressed concerns regarding Mrs. Beta's childcare ability to both Mrs. Beta and Appellant's command. Appellant's assistant trial defense counsel later cited both motives in arguing that the members should not trust Mrs. Beta's testimony.

The statement at issue was made after the event for which Appellant stands convicted, but before both the child's birth and the parties' divorce filing, and before Mrs. Beta's discussions with GySgt Golf. Mrs. Beta's statement to Ms. Bravo did not rebut the alleged motive to fabricate related to Appellant's threats about the couple's dog, made a year earlier; but the statement did serve to rebut the alleged motive related to child custody. And it was consistent with Mrs. Beta's testimony at trial. Accordingly, the state-

---

[17] R. at 379.

ment qualifies as a prior consistent statement under Military Rule of Evidence 801(d)(1)(B)(i). There was no error, plain or otherwise, in its admission.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the finding and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred. UCMJ arts. 59, 66.

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court