*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
GASTON, HOUTZ, and MYERS
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Micole A. DAUGHERTY**
Machinist's Mate Third Class (E-4), U.S. Navy
*Appellant*

**No. 202000133**

Decided: 18 August 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Benjamin C. Robertson

Sentence adjudged 4 March 2020 by a special court-martial convened at Naval Station Mayport, Florida, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-1, confinement for 7 months, and a bad-conduct discharge.

For Appellant:
*Lieutenant Megan E. Horst, JAGC, USN*

For Appellee:
*Lieutenant Commander Jeffrey S. Marden, JAGC, USN*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

Appellant was convicted, contrary to her pleas, of conspiracy to obstruct justice, failure to go to her appointed place of duty, and false official statement, in violation of Articles 81, 86, and 107, Uniform Code of Military Justice [UCMJ],[1] for conspiring with another Sailor to manufacture injuries and falsely reporting she was drugged and raped to avoid getting in trouble for missing a training class.

Appellant asserts two assignments of error: (1) the military judge abused his discretion by denying Appellant's challenge to all members detailed to her court-martial panel, which resulted in one member sitting on the panel who knew facts about the case, three members sitting on the panel who knew Appellant, and one member sitting on the panel who knew Appellant's co-conspirator; and (2) Appellant's trial defense counsel was ineffective for failing to individually challenge the three members who knew Appellant on grounds of implied bias. We find no prejudicial error and affirm.

## I. BACKGROUND

After drinking alcohol at a nightclub with Seaman Recruit Warren,[2] Appellant overslept the next morning and missed a pre-deployment fire-fighting class. Panicked that her tardiness would get her in trouble, she had Seaman Recruit Warren punch her in the face and drive her to a wooded area near base, where she rolled around in the dirt to make it look as though she had been in a struggle. Appellant then went to the base gate and told the security personnel she had been drinking with a man at a club and later woke up in the bushes outside the gate with pain in her vagina. She subsequently reported to the Naval Criminal Investigative Service [NCIS]

_____

[1] 10 U.S.C. §§ 881, 886, 907.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

that she had been drugged and raped, and underwent a sexual assault forensic examination at a nearby hospital. Seven NCIS agents and forensic analysts then spent over 400 hours investigating the case—including identifying and extensively interviewing another Sailor as a possible suspect, collecting his DNA and fingerprints, and searching his cell phone and vehicle—before determining through security camera footage that Appellant's report was false.

At trial, Seaman Recruit Warren testified that after waking up late Appellant told Seaman Recruit Warren to "bruise her up" because she could not "go in this late without something being wrong with [her]."[3] Appellant admitted making the false report, but testified that it was Seaman Recruit Warren's idea and that she only participated in the scheme because she was afraid of Seaman Recruit Warren. The members found Appellant guilty of all charges and specifications.

## II. DISCUSSION

After voir dire of the members, Appellant's trial defense counsel requested an entirely new panel citing Article 25, UCMJ, and arguing that many of the members knew Appellant and the facts of the case and "had far too much involvement in her situation."[4] The defense counsel stated, "In the alternative, we will be challenging all but three members of the panel."[5] The military judge denied the request to order the convening authority to issue a new panel and stated he would address challenges to the panel members individually. He then granted five Government challenges for cause, four Defense challenges for cause, and a Defense peremptory challenge. This left the panel with only three members—one below the required quorum of four for a special court-martial.

The three members who were not challenged by the Defense were Lieutenant Junior Grade [LTJG] Oscar, Ensign Charlie, and Senior Chief Foxtrot. Each of these members knew that Appellant was stationed with them aboard USS *Fort McHenry* (LSD 43), an amphibious ship with a company of approximately 300 Sailors. LTJG Oscar vaguely remembered hearing about some Sailors who did not show up to school prior to deployment the year

---

[3] R. at 314.

[4] *Id*. at 184.

[5] *Id*.

before, but was not familiar with any specific facts, including whether Appellant was involved, and did not have any negative impression of Appellant based on anything she had heard or seen of Appellant's interactions with other Sailors on the ship. Ensign Charlie knew Appellant from working on the ship during deployment, but never worked with her personally and did not have any opinion of her, positive or negative. Senior Chief Foxtrot knew Appellant and Seaman Recruit Warren in passing from the ship, did not have a negative opinion of either of them, and was not aware of any disciplinary issues involving Appellant.

Because the panel only had three members, the convening authority detailed eight additional members. After voir dire of the new members, the military judge granted two more Government challenges for cause, three more Defense challenges for cause, and another Defense peremptory challenge. One of the remaining two new members became the fourth member of the panel.

## A. Challenge to the Entire Venire

Appellant asserts the military judge abused his discretion by denying the Defense's request for a new court-martial panel. We disagree.

Pursuant to Rule for Courts-Martial [R.C.M.] 912(b), before voir dire, "or at the next session after a party discovered or could have discovered by the exercise of diligence, the grounds therefor, whichever is earlier, that party may move to stay the proceedings on the ground that members were selected improperly."[6] Such a motion includes "an offer of proof of matters which, if true, would constitute improper selection of members."[7] Improper selection of members can occur if the selection process relies on criteria other than those stated in Article 25, UCMJ, which provides that the convening authority shall detail members who "in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament."[8]

Alternatively, pursuant to R.C.M. 912(f), members may be challenged and removed for cause. "A member shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and

---

[6] R.C.M. 912(b)(1).

[7] R.C.M. 912(b)(2).

[8] Article 25, UCMJ.

impartiality."[9] Members may be excused on grounds of either actual or implied bias.[10] The test for implied bias is an objective one that considers "the public's perception of fairness in having a particular member as part of the court-martial panel."[11] "[A]t its core, implied bias addresses the perception or appearance of fairness of the military justice system."[12] The totality of the circumstances are considered in making this assessment.[13] Defense challenges for cause must be liberally granted.[14] We review a military judge's ruling on a challenge for cause for an abuse of discretion.[15] While rulings based on actual bias are afforded a high degree of deference, "issues of implied bias are reviewed under a standard less deferential than abuse of discretion, but more deferential than de novo."[16]

Here, Appellant concedes the Defense motion for a new court-martial panel was ultimately not a challenge to the member selection process under R.C.M. 912(b), but was rather a collective implied-bias challenge to all panel members under R.C.M. 912(f).[17] Construed in this light, the military judge's decision to address the parties' challenges individually rather than collectively is consistent with R.C.M. 912(f), which contemplates that challenges and removal for cause will be assessed and determined for each panel member. The bias asserted by the Defense was the extent to which the members knew Appellant or had prior knowledge of the facts of the case—an inquiry

---

[9] R.C.M. 912(f)(1)(N).

[10] *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002).

[11] *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015) (quoting *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015)).

[12] *Downing*, 56 M.J. at 422 (citation omitted).

[13] *Woods*, 74 M.J. at 243 (citation omitted).

[14] *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005).

[15] *Woods*, 74 M.J. at 243.

[16] *Id.* (quoting *Downing*, 56 M.J. at 422).

[17] Appellant's Reply at 6 ("[T]hough defense counsel stated 'Article 25' at one point, she did not argue that the members were improperly selected or excluded by the convening authority. Thus, since defense counsel's substantive argument was an implied bias challenge, this Court should find that the essence of defense counsel's motion was an implied bias challenge to the entire panel."). We agree with this assessment.

requiring assessment for each member individually.[18] We are aware of no authority, and Appellant cites none, *requiring* the trial court to address such challenges collectively rather than individually; thus, it was not error for the military judge to decline to do so. Even if it were, as explained below, the three members who remained on the panel after the initial challenges were not subject to excusal for cause.

## B. Ineffective Assistance of Counsel

Appellant asserts her trial defense counsel was ineffective for failing to individually challenge the three members who knew Appellant based on implied bias. We review claims of ineffective assistance of counsel de novo.[19]

Our review uses the two-part test outlined in *Strickland v. Washington*.[20] "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that [her] counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[21] When a claim of ineffective assistance of counsel is premised on trial defense counsel's failure to move the court to take some action, "an appellant must show that there is a reasonable probability that such a motion would have been meritorious."[22] "Failure to raise a meritless argument does not constitute ineffective assistance."[23]

We find no deficiency in the failure to individually challenge LTJG Oscar, Ensign Charlie, or Senior Chief Foxtrot for actual or implied bias, as Appellant's trial defense counsel correctly determined that the Defense "didn't really have an articulate challenge for cause beyond the general

---

[18] *See Woods*, 74 M.J. at 243 (stating the inquiry into implied bias looks at "the public's perception of fairness in having a *particular* member as part of the court-martial panel") (quoting *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015)) (emphasis added).

[19] *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted).

[20] 466 U.S. 668, 687 (1984).

[21] *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687).

[22] *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citation and internal quotation marks omitted).

[23] *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997) (quoting *Boag v. Raines*, 769 F.2d. 1341, 1344 (9th Cir. 1985)).

objection that they were all part of the same command."[24] The limited professional interactions the three members had with Appellant or Seaman Recruit Warren onboard the ship—which had produced no negative opinions of them and amounted essentially to knowing who they were—provided no basis for the members' excusal on grounds of actual or implied bias.[25] Nor did LTJG Oscar's vague recollection of overhearing some prior discussion about personnel not showing up to school amount to a disqualifying awareness of the specific facts of the case, where she maintained she could remain fair and impartial notwithstanding anything she might have heard.[26] Based on the record before us, and considering the liberal-grant mandate, we find any causal challenge against these three members would have been meritless and, therefore, the defense counsel's failure to challenge them did not constitute ineffective assistance.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[27]

The findings and sentence are **AFFIRMED**.

---

[24] Decl. of Appellant at 2.

[25] Personal knowledge of a witness based on a professional relationship is "not disqualifying *per se*." *United States v. Warden*, 51 M.J. 78, 82 (C.A.A.F. 1999). The same rule applies to collegiality between members, in this case LTJG Oscar and Ensign Charlie, who were "friendly at work" and had "h[u]ng out maybe once a month outside of work, but nothing super close" that would impede or inhibit their "free and frank discussion" of the evidence as panel members. R. at 100–01. *See Downing*, 56 M.J. at 423 (distinguishing between "officers who are professional colleagues and friends based on professional contact and those individuals whose bond of friendship might improperly find its way into the members' deliberation room").

[26] *See United States v. Lake*, 36 M.J. 317, 324 (C.A.A.F. 1993) ("[Q]ualified jurors need not . . . be totally ignorant of the facts and issues involved in the case before them.") (citation and internal quotation marks omitted); *United States v. Akbar*, 74 M.J. 364, 397 (C.A.A.F. 2015) ("[P]anel members are not automatically disqualified simply because they have learned facts about an accused from outside sources," where they have "expressed their ability to lay aside their knowledge of [the] events in rendering a verdict in [the] case.") (citation omitted).

[27] Articles 59, 66, UCMJ.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court